## HASKELL, adm'r, vs. THE STATE, et al.

1. *Bona fide purchaser, etc.*
   So long as the vendor retains the legal title, a purchaser from the vendee cannot allege want of notice of the vendor's lien for unpaid purchase money.

2. FORECLOSURE OF VENDOR'S LIEN: *Who is bound by.*
   Where a vendor files a bill against the vendee to foreclose his lien for unpaid purchase money, and fails to make subsequent purchasers or incumbrancers parties, they are not bound by the decree, and their right to redeem is not barred.

3. ————: *By the State.*
   Under the provisions of the Act of July 16th, 1868, providing for the foreclosure of the State's lien for purchase money of public lands, a purchaser from the State's vendee, who is not made a party, or served with notice of the proceeding on the part of the State to foreclose, may, after decree and sale thereunder, and before a confirmation of the sale, apply to redeem; and the fact that the purchaser under the decree has procured a patent from the Governor, before confirmation of the sale, will not divest the chancellor of the power to set it aside, and permit the land to be redeemed.

4. MARSHALLING OF SECURITIES: *When purchaser not entitled to.*
   Where a vendee sold a tract of land subject to the vendor's lien for unpaid purchase money, and the subsequent purchaser mortgaged one parcel, and afterwards sold the remainder of it, without covenants against the incumbrance in either case; held, that the lien should be charged rateably upon the two parcels according to value.

APPEAL from *Pulaski* Chancery Court.

Hon. W. I. WARWICK, Chancellor.

*Clark & Williams*, for appellants.

*D. W. Carroll*, for Murphy, appellee.

ENGLISH, CH. J.:

On the 16th October, 1848, the State sold to Bushrod W. Lee, the Northeast quarter of section eight, and the Northwest quarter of section nine, in Township eight South, Range four West, for $400, for which his note was taken, payable in five annual instalments, and a certificate of purchase delivered to him. The lands were situated in Arkansas County, and part of the internal improvement lands. It seems that Lee paid upon the note, November 5th, 1851, $253.50.

On the 10th September, 1870, the State filed a bill against Lee, in the Pulaski Chancery Court, to foreclose his lien upon the lands for balance of purchase money; and on the 6th of December, 1870, (Lee having been served with process less than thirty days before the commencement of the term) a decree was rendered against him on default, for $418.15, and costs, and the lands condemned to be sold to satisfy the decree. Upham was appointed a commissioner to sell the lands, and on the 6th day of February, 1871, he sold them at public sale, and John P. Murphy purchased both tracts for $515.

On the 28th of February, 1871, and before the sale had been confirmed by the chancellor, Langdon C. Haskell, as administrator of Augustus M. Smith, deceased, filed the original bill in this case, making the State, John P. Murphy, Ambrose H. Sevier as administrator of John A. Jordan, deceased, and Lee, defendants.

The material allegations of this bill, after setting out the proceedings in the case of the State against Lee, and being corrected by some facts agreed upon, are as follows:

That shortly after Lee purchased the lands of the State, he sold them to John A. Jordan, and conveyed them to him by deed, with general covenants of warranty, duly recorded in the county where the lands were situated.

That Jordan took possession of the lánds, made large improvements thereon, and they constituted part of his plantation at South Bend, Arkansas County, to the time of his death, 15th September, 1861, etc.

That on the 15th March, 1860, Jordan mortgaged one of the tracts, Northeast quarter of Section eight, with other lands, to Augustus M. Smith, to secure a debt of $60,000, which mortgage was duly recorded, etc.

That Smith afterwards died, and Haskell, the plaintiff in this bill, having been appointed his administrator, filed a bill in the Arkansas Circuit Court in 1866, against the administrator and heirs of Jordan, to foreclose the mortgage, and at the fall term, 1868, obtained a decree for $84,000, and for a sale of the lands covered by the mortgage to satisfy the decree. That the defendants therein appealed to the Supreme Court, where the cause was pending when the State instituted the above proceedings against Lee, and the decree was affirmed after the decree against Lee, but before the sale of the lands by the commissioner. (See *Sevier, adm'r, et al* v. *Haskell, adm'r*, 26 Ark., 133). That upon the affirmance of the decree the possession of the lands embraced in the mortgage were, by consent of parties to that suit, turned over to the plaintiff, to be managed and controlled by his attorney, Sol. F. Clark, who was to receive the rents and profits until the representatives of Jordan could further litigate the matter upon appeal to the Supreme Court of the United States, and that Clark, on the 18th February, 1871, rented the lands to Jacob B. Sumner, who was in possession thereof, etc.

That when the State instituted her suit against Lee, Haskell was the administrator of Smith, who held the mortgage from Jordan; and Sevier, the administrator of Jordan, was in possession of the lands, yet neither Haskell nor Sevier was made party to the suit, nor did either of them have notice thereof.

That said Northeast quarter of Section eight, etc., was in the midst of the plantation of Jordan, known as the West End place, part thereof in cultivation, and the land valuable; and that Lee, the only person made defendant in the suit of the State, had had no interst in the land for more than twenty years; and that the representatives of Jordan and Smith were the only persons interested therein.

Prayer that the decree in the case of the State against Lee be vacated, the sale to Murphy set aside, and that plaintiff Haskell, as administrator of Smith, be permitted to redeem the said Northeast quarter of Section eight, etc.

Murphy filed an answer to the bill 19th June, 1871, in which he sets up and relies upon the decree of the State against Lee, and his purchase of the lands thereunder, claims to be an innocent purchaser, etc., and alleges that after he purchased the land, he obtained a certificate from the commissioner who made the sale, and a certificate from the commissioner of immigration, upon which the Governor of the State executed to him a deed bearing date 6th of February, 1871, which is made an exhibit.

On the 15th November, 1871, Haskell as administrator of Smith, filed an amendment to his bill, in which he alleged in substance, that long after Jordan had mortgaged said Northeast quarter of Section eight, etc., to Smith, and after the death of Jordan and the appointment of Sevier as his administrator, and while the lien of the State for purchase money of both tracts sold by her to Lee was in full force, Sevier as administrator of Jordan, on the —— day of ——, 1868, obtained an order of the Probate Court of Arkansas County, to sell the said Northwest quarter of Section nine, etc., with the other lands, to pay debts of the estate; and that in pursuance of the order he advertised and sold said tract (with others), and that Wm. H. Halliburton (who is made defendant) became the purchaser thereof, and that

Sevier put him in possession of the land, and that he had continuously thereafter received the rents and profits thereof.

That Jordan, in his lifetime, having conveyed by mortgage to Smith the Northeast quarter of Section eight, which he continued to own and possess, the Northwest quarter of Section nine, was bound to discharge the lien of the State upon both tracts for purchase money, and a like duty rested upon Sevier as his administrator after his death, but that his estate was utterly insolvent.

That Halliburton, when he purchased the Northwest quarter of Section nine, had notice of the lien of the State; and if not, he purchased the land on credit, and had not paid the purchase money, or received a deed from Jordan's administrator.

Prayer that the sale to Murphy be set aside (the same not having been confirmed by the chancellor) and that unless Sevier, as administrator of Jordan, or Halliburton would pay the money due the State on both tracts, the State be compelled in selling the lands, to sell first the Northwest quarter of Section nine, and if it should not bring enough to pay the whole of the debt due the State, that Haskell, as administrator of Smith, be permitted to pay the balance in redemption of the Northeast quarter of Section eight.

Sevier as administrator of Jordan, filed a cross-bill, claiming the right to redeem the Northwest quarter of Section nine, but on the filing of the answer of Wm. H. Halliburton to the original bill and amendment, setting up title, and offering to redeem the same tract, Sevier entered a disclaimer of any interest in the suit.

Halliburton answered 22d February, 1872, stating in substance :

That he purchased from the estate of Jordan, at a public sale ordered by the Probate Court of Arkansas County, said Northwest quarter of Section nine, etc., and received a deed therefor

from the administrator of the estate, whereby he became the owner of the right and title of said estate in said land. He professes to exhibit the deed, but it is not in the transcript. He denies all notice of the claim of the State upon the lands, etc., insists that the sale to Murphy under the decree in favor of the State was illegal, and joins in the prayer of the bill to set it aside. Denies that Haskell, as administrator of Smith, or any one else, has the right to call upon or require him to contribute to pay off the claim of the State, if any she has, upon the land; but if the court should be of the opinion that the land purchased by him is liable to any portion of the claim of the State, respondent is willing and offers to pay the same when ascertained under the direction of the court. Admits that he was never in the actual possession of the land, but had been trying for some time to get possession thereof. That Jacob B. Sumner had, until his death recently, been in possession of the land, and after his death Solomon F. Clark put some one else in possession.

Murphy answered the amendment to the bill 28th March, 1872. He admits that in 1868, the administrator of Jordan obtained the probate order of sale as alleged, that the sale was made under the order, and that Halliburton purchased the said Northwest quarter of Section nine, etc., but submits that neither Haskell as administrator of Smith, Sevier as administrator of Jordan, nor Halliburton, has any right to redeem said lands, etc.

The parties agreed upon the following facts:

*First*—That the land in question belonged to the State, and were part of the internal improvement lands.

*Second*—That Lee purchased the lands of the State, and gave the note for purchase money described in the bill of the State against Lee.

*Third*—That the commissioner in making a sale of the lands, complied with all the requirements of the decree of the State against Lee.

*Fourth*—That shortly after Lee purchased the lands of the State, he sold and conveyed them to Jordan by deed with general covenants of warranty, which was duly recorded in Arkansas County, where the lands were situated; and that Jordan mortgaged to Smith one of the tracts as alleged in the pleading.

*Fifth*—That Halliburton holds the tract claimed by him by regular deed from Sevier, as administrator of Jordan, under a sale made by order of the Probate Court, etc., as set forth in his answer.

Solomon F. Clark deposed that in the year 1870, Jacob B. Sumner occupied both of the tracts of land in controversy as tenant of Sevier, administrator of Jordan, during which time the suit was pending for the foreclosure of the mortgage executed by Jordan to Smith. That after the institution of the suit of the State against Lee, and while the same was pending, the decree of the Supreme Court was rendered affirming the decree of the court below foreclosing the mortgage; and the possession of the property was turned over to witness as receiver by the Supreme Court, by consent of all parties, and he took possession of the same February 18th, 1871, and rented the same out in his own name to Sumner. That the Northeast quarter of Section eight, lies in the heart of the plantation of Jordan, known as the West End, is very valuable, and could not be separated from the plantation without great damage to the whole place. That he knew nothing of the pendency of the suit of the State against Lee, until after the lands were sold, nor did Haskell, administrator of Smith, nor, as he believed, did Sevier, administrator of Jordan. The mortgage to Smith was for a great deal more than the mortgaged lands were worth, and the estate of Jordan utterly insolvent; supposed to be able to pay not more than five cents on the dollar. Neither the administrator of Jordan, nor his general creditors had any interest in redeeming the lands, or

protecting them from sale by the State to pay balance of purchase money due from Lee, etc.

The cause was heard by the chancellor, the bill dismissed for want of equity, and Haskell, administrator of Smith, appealed to this court.

*First*—It cannot be rightfully affirmed, that Jordan, Smith, or Halliburton was an innocent purchaser, without notice of the lien of the State for purchase money, for when Lee sold the lands to Jordan, and when Jordan mortgaged one of the tracts to Smith, and when his adminstrator sold the other tract to Halliburton, the legal title to the lands was in the State. Lee was never seized in fee of the lands. *Gerson* v. *Pool, ante.*

*Second*—In her bill to foreclose, the State made no one defendant to the bill but Lee, who had long before parted with his equitable title to the lands by deed put upon the public records, and the lands had gone into the possession of Jordan, and had become part of his plantation. Sumner, the tenant of his administrator, who was an occupant of the lands, was not made party.

It is a well settled general principle of equity, that where a vendor or mortgagee, files a bill against the vendee or mortgagor to foreclose, and fails to make subsequent purchasers or incumbrancers parties, they are not bound by the decree, and their right to redeem is not barred. Story Eq. Plead, sec. 193; *Haines* v. *Beach*, 3 John Ch., 460; *Moore* v. *Cord*, 14 Wisconsin, 215; *Childs* v. *Childs et al.*, 10 Ohio State, 339.

By Act of 16, July, 1868 (Pamp't Acts 1868, p. 77) the State was authorized to bring suits in the Pulaski Chancery Court, on notes, bonds, etc., given by purchasers of internal improvement, and other public lands, for purchase money, and to foreclose and sell the lands, etc. The suits were to be brought against the makers of the notes or bonds given for purchase money, and service of process authorized in any county in the State. The

process might also be served upon the occupant of the land for which the note or bond was given—sec. 4. Upon the return of process directed to the county where the land was located, that the defendant could not be found, or upon an affidavit that he was a non-resident of the State, public notice was to be given through a newspaper, etc.—sec. 5. Section 8, *provides*: "That, in case of actual service upon the defendant, all persons, except an actual occupant not served, shall be bound, foreclosed and barred by the proceeding and judgment, and the person in actual possession, if served with process, shall also be bound, foreclosed and barred by such proceeding and judgment. When the service is by publication, the defendant, his heirs, his personal representatives, and all other persons, including the person in actual possession of such land, shall be forever bound, foreclosed and barred by such proceeding and judgment."

In this case the occupant of the lands is not before the court, and is claiming nothing. Lee was served with process, and no publication was made. The subsequent purchasers, etc., had no notice, actual, by service of process, or by publication, of the bringing of the suit by the State to condemn the lands for the payment of the purchase money due to her.

Whether the legislature could provide for a decree to bind subsequent purchasers, etc., and bar their right to redeem, without making them parties, or giving them any notice, actual or constructive, or any opportunity to be heard and assert their rights, is a grave question. But be this as it may, the bill of Haskell to redeem was filed in this case before the sale of the lands to Murphy by the commissioner, had been confirmed by the court below, and the chancellor had power to set it aside, and allow the lands to be redeemed. *Penn's adm'r* v. *Tollison*, 20 Ark., 652; *Eakin & Co.* v. *Herbert et al.*, 4 Cold. (Tenn.), 117.

Nor did the fact that Murphy obtained a deed from the Governor prematurely, and before confirmation of the sale, deprive

the chancellor of the power to set aside the sale, and permit the lands to be redeemed.

*Third*—Sevier, as administrator of Jordan, having disclaimed, Haskell as administrator of Smith, and Halliburton, have the right to redeem the lands. *Moore* v. *Beason*, 44 New Hamp., 218 ; *Smith* v. *Austin*, 9 Mich., 473 ; *Frink* v. *Murphy*, 21 California, 109 ; *Fletcher* v. *Chase*, 16 New Hamp., 39.

*Fourth*—It remains to be decided whether Haliburton shall pay the whole of the redemption money on both tracts, or whether it shall be paid rateably by him and Haskell, administrator of Smith, according to the value of their respective tracts.

Story says :—"The general rule now acted upon by the Courts of Equity is, that where there is a lien upon different parcels of land for the payment of the same debt, and some of the lands still belong to the person, who, in equity and justice owes, or ought to pay, the debt, and other parcels of the land have been transferred by him to third persons, his part of the land, as between himself and them, shall be primarily chargeable with the debt. This would seem highly reasonable as to the original incumbrancer. But it has been further held, that if he has sold or transferred different parcels of the land at different times, to different persons, as incumbrancers or purchasers, then, as between themselves, they are to be charged in the inverse order of the time of the transfers to them ; that is to say, the parcels last sold are to be first charged to their full value, and so backwards, until the debt is fully paid ; for, it is said, that the last purchasers are to take only as far as they may, without disturbing the rights of the prior incumbrancers or purchasers, who, being prior in point of time, have a superiority of right." 2 Story Eq. Juris., sec. 1233 a. The cases supporting this rule are cited by Judge Story in the margin. See also, 2 Leading cases in Equity ; Hare and Wallace notes, p. 241, etc.; *Iglehart et al.* v. *Crane et al.*, 42 Ill., 262.

"But (continues Judge Story) there seems great reason to doubt whether this last position is maintainable upon principle; for, as between the subsequent purchasers or incumbrancers each trusting to his own security upon the separate estate mortgaged to him, it is difficult to perceive that either has, in consequence thereof, any superiority of right or equity over the other. On the contrary, there seems strong ground to contend that the original incumbrance or lien ought to be borne rateably between them, according to the relative values of the estates. And so the doctrine has been asserted in the ancient, as well as the modern, English cases on the subject"—citing them. See also, *Dickey* v. *Thompson*, 8 B. Monroe, 312; *Bates* v. *Ruddick et al.*, 2 Clarke, Iowa, 423, and cases cited.

The counsel for appellant insist that the weight of authority is in favor of the rule as first above stated by Judge Story, and against the rule of equal contribution as last stated by him. Be this as it may, we will take the rule as first stated by Judge Story, to be the law for the purposes of this case, and see what the result will be when applied to the facts of the case.

Lee purchased both of the tracts of land in question, of the State, and gave his notes for the purchase money. If he had sold one tract to Jordan, by deed with covenants of warranty, and afterwards sold the other tract to Halliburton, the tract last sold would have been primarily liable for the debt due the State, for Halliburton would have stood in the place of Lee, who was bound to pay the debt due the State. *Clowes* v. *Dickenson*, 5 John Ch., 241.

But here Lee sold and conveyed both tracts to Jordan. The State had a lien on both tracts in his hands for purchase money due from Lee, but this was not a personal debt of Jordan's; he was under no personal obligation to pay it. It was Lee's debt, not his. Jordan mortgaged one of the tracts to Smith, but

in the mortgage did not covenant against the incumbrance of the State. The mortgage contains the words "grant, bargain and sell," but these words do not imply a covenant against incumbrances not done or suffered by the grantor. Gantt's Digest, sec. 829. *Winston* v. *Vaughan*, 22 Ark., 72.

Halliburton purchased the other tract of Jordan's administrator, at a probate sale, and obtained a deed therefor, but he got no warranty against the incumbrance of the State from the administrator, and was under no more obligation to pay Lee's debt to the State than Smith was, who took his mortgage without warranty against the incumbrance. *Guion* v. *Knapp*, 6 Paige, 39.

We can see no good reason in this case, why the lien of the State should not be charged rateably upon the two tracts, according to their respective values.

There being nothing alleged or shown to the contrary, we shall take the tracts in this case to be of equal value.

The decree of the court below must be reversed, and the cause remanded, with instructions to the court to permit Haskell, as administrator of Smith, to redeem the Northeast quarter of Section eight, and Halliburton to redeem the Northwest quarter of Section nine, by each of them paying into court, by a reasonable day to be fixed by the court, one-half of the amount due the State, as ascertained in the decree against Lee, and upon the money being so paid into court, the court will decree the legal title to the one tract to Haskell, as administrator of Smith, to be held by him in trust, etc., and the legal title to the other tract to Halliburton.

Out of the money so paid into the court, Murphy will be re-imbursed the amount paid by him on his bid for the lands.