LITTLE ROCK & FORT SMITH RAILWAY COMPANY, *use* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* RANKIN.

Opinion delivered March 24, 1913.

1. ADVERSE POSSESSION—BOND FOR TITLE.—The possession of land by the purchaser from the holder of a bond for title is not adverse to the owner, and limitations will run against the owner only from the time it has knowledge of the adverse holding, even though he has knowledge of the possession. (Page 492.)

2. ADVERSE POSSESSION—WHEN TITLE PERFECTED.—Where possession is in fact adverse for nine years, title will be perfected against the

record owner, whether it has, knowledge of the adverse possession, or not.   (Page 492.)

3.  DEEDS—QUITCLAIM DEED—INTEREST CONVEYED BY GRANTOR.—The grantee in a quitclaim deed takes only the interest held by the grantor, and when the grantor has only a right to receive a deed under a bond for title upon performance of the terms of the bond, the grantee has no greater right.  (Page 493.)

4.  VENDOR AND PURCHASER—QUITCLAIM DEED—NOTICE.—A grantee in a quitclaim deed takes with notice of all imperfections in his grantor's title.  (Page 493.)

5.  ADVERSE POSSESSION—POSSESSION OF GRANTEE UNDER TITLE BOND.— When A purchases land from B, who holds under a bond for title, the possession of A is the possession of his grantor and is subordinate to the title of the holder of the record title.  (Page 493.)

6.  VENDOR AND PURCHASER—VENDOR'S LIEN—LACHES.—A suit brought in 1906 by a party who executed a bond for title in 1891, to have the deferred payments declared a lien on the land, is not barred by laches, when the owner paid all of the taxes on the land and had no knowledge that a purchaser from the holder of the title bond, was claiming adversely, even though it knew of the latter's possession, when the facts do not show that it had abandoned its claim.  (Page 493.)

Appeal from Faulkner Chancery Court; *Jeremiah G. Wallace,* Chancellor; reversed.

### STATEMENT BY THE COURT.

Appellant was the plaintiff below and brought this suit on October 23, 1906, to collect the balance of purchase money alleged to be due it upon the sale of west half of southeast quarter (south of chute), section 28, township 4 north, range 14 west, lying in Faulkner County, Arkansas.   The complaint alleged that plaintiff was the owner of the land above described on January 2, 1891, and on that date contracted to sell it to the defendant, G. E. Rankin, for the sum of $374.56, of which $46 was paid in cash at the time, the balance to be paid in six annual installments; that defendant, Rankin, agreed to pay all taxes thereafter assessed against the land and to cut no timber or wood on said land, except for clearing for actual cultivation and for fences, buildings and fuel.   That plaintiff agreed to make defendant, Rankin,

a good and sufficient deed to said land upon his making said payments, and keeping his contract; and that this contract was reduced to writing and signed by the parties, and that by virtue of this contract, defendant, Rankin, made the cash payment and entered into the possession of the land and remained in the possession until December 25, 1896, at which time the said Rankin assigned his said contract by quitclaim deed to defendant, S. G. Smith, who is now in possession of said land; that said Smith took subject to the vendor's lien of plaintiff and that the deferred payments have never been made. Plaintiff prayed judgment for the balance due, with interest; and that said sum be declared a lien on said land. Plaintiff made the contract, above referred to, an exhibit to its complaint, and it contained the provisions above mentioned and further provided that it should not be assigned, unless the assignment was countersigned by the commissioner of the land department of the railroad company; and also that upon default in any payment the company should have the right to declare the contract null and void and to take possession of the lands described therein.

The service against Rankin was by publication and he made no defense, but the defendant, Smith, answered and denied that plaintiff had ever owned the land or that it had ever conveyed it to Rankin, or that Rankin was indebted to it in any sum on account of his purchase, and denies that Rankin assigned to him any contract of purchase. The answer further alleged that if said Rankin did in fact execute any obligation for purchase money, it was long since barred by the statute of limitations and plead his own adverse possession of the land for a period of more than seven years before the institution of the suit. The defendant, Smith, made the deed from Rankin to him an exhibit to his answer. This deed was dated December 15, 1896, and the consideration was recited to be $20.

Plaintiff filed a reply in which it denied there was any consideration for the conveyance from Rankin to

Smith, and denied that Smith had ever held the land adversely or that its title had ever been disputed, and alleged it had paid all taxes due on said land. Plaintiff later amended its complaint, showing the sale of the land to St. Louis, Iron Mountain & Southern Railway Company.

The evidence on the part of the railroad company showed its ownership of the land at the date of the bond for title to Rankin and its uninterrupted payment of taxes down to date of this suit, and the execution of the bond for title by the parties thereto.

· The evidence upon the part of the defendant, Smith, was to the effect that he paid $20 in cash for the land and there was some other consideration. That Rankin had been in the possession of the land for some time and he supposed was the owner of it, and that upon his purchase he placed his tenants in possession of the land, and had since been in the actual and adverse possession of it. That he made no investigation of the title, but supposed Rankin owned the land and did not know his title was not perfect. Smith further testified that his bookkeeper paid his taxes and he supposed had paid on this land for the different years, but the receipts do not appear in the record. Upon the contrary, the receipts for all the years in controversy are in the name of the railroad company.

No excuse was offered, in either the pleadings or the proof, for the delay in the institution of this suit, and the deed from Rankin to Smith contained no reference to the source of his title, and the proof appears to support his statement that he purchased the land in good faith and had occupied it without knowledge of the railroad's interest from the date of his purchase. But it does not appear that the railroad company knew of his possession until a year before the institution of this suit.

The cause was heard at the September, 1912, term of the court, which found that the cause was barred by limitation and laches and dismissed the complaint for want of equity.

*C. M. Walser,* for appellant.

1. Appellee, Smith, took with notice of all imper-fections in his grantor's title. 50 Ark. 322; 31 Ark. 91; 23 Ark. 736; 14 Ark. 69; 42 Kan. 754; 56 Ala. 256; 34 Fed. 368; Wade on Notice, § § 11, 23 and 330; Devlin on Deeds, § 733; 39 Cyc. 1693. His possession was that of his grantor, and as such was subordinate to appellant's title. 27 Ark. 61; 21 Ark. 202; 18 Ark. 142; 14 Ark. 628; 99 Tex. 539; 19 Fed. Cas. 695; 79 S. W. 863; 6 Johns. Chy. (N. Y.) 398; 1 Cyc. 1049; 39 Cyc. 1821.

2. The statute of limitations does not run against a vendor in favor of a vendee holding under a contract of purchase. 83 Ark. 374; 76 Ark. 405; 41 Ark. 523; 71 Ark. 164; 34 Ark. 312. Where the original possession was in privity with the rightful owner, the statute will not begin to run until there is an open and explicit dis-avowal and disclaimer of holding under that title brought home to the other party. *Id.*

3. The burden of proving adverse possession rests on the party relying on it for title. 57 Ark. 97; 61 Ark. 464; 65 Ark. 422. And a statement that one has been in open, actual and notorious possession of the land and that no one disputed his ownership, will not support the claim. 84 Ark. 587; 40 Ark. 366; Harvelle on Ejectment, § 420.

*R. W. Robins,* for appellee, Smith.

The finding of the chancellor on the question of ad-verse possession is not only supported by the weight of the evidence but by all of it, and his finding on this ques-tion of fact should not be disturbed. 101 Ark. 510; *Id.* 493; *Id.* 336; 100 Ark. 555; *Id.* 370; *Id.* 166; 98 Ark. 459; 97 Ark. 568; *Id.* 537. Courts of equity can not forever remain open and nothing will call it into activity but con-science, good faith and reasonable diligence. Laches and neglect are always discountenanced. 55 Ark. 85; 83 Ark. 385; 96 U. S. 612, 24 L. Ed. 855; 2 Story, Eq. Jur., § 1520; 2 Amb. 645.

If appellant was not actually apprised of Smith's possession, certainly reasonable diligence could have dis-

covered his deed on record, and that he and his tenants were in possession and cultivating the land. 87 Ark. 232; 33 Ark. 466; 101 Ark. 163; 90 Ark. 149; 76 Ark. 25; Kirby's Dig., § 762; 56 Ark. 601.

The contract specifically provided that no assignment thereof could be made without the consent of appellant; it will therefore not be heard to claim that it had the right to presume that Smith's deed and possession were not hostile to its title, or that the conveyance by Rankin simply amounted to an assignment of his contract.

*C. M. Walser,* for appellant, in reply.

Since appellant had never parted with the legal title, the claim that it is chargeable with laches is untenable. 61 Tex. 166; 113 Fed. 433.

The law imputes to Smith notice of such facts as might have been ascertained by the exercise of reasonable diligence, or by making proper inquiry. In this case it would, have disclosed the fact that Rankin was a stranger to the title and had nothing to convey except such interest as he had acquired under the contract of purchase, and that he was in possession in recognition of appellant's title.

Smith, J., (after stating the facts). Under the facts here stated, Smith's possession of the land could not be adverse to the railroad company until that company had knowledge of the adverse holding, and the statute of limitations would not begin to run until the possession became adverse. The mere fact that the railroad company had no knowledge of Smith's possession is not controlling. If the possession had in fact been adverse for the nine years of his occupancy before the suit was brought, then his title would have been perfected by his possession, and this would be true whether the railroad company had actual knowledge of this possession or not. On the other hand, actual knowledge of Smith's possession would not have set the statute of limitations in motion unless it was also known that the possession was in hostility to the railroad company. Smith's quitclaim deed

from Rankin could convey no greater right than Rankin had, and this was the right to receive a deed upon the payment of the purchase money and the performance of the terms of the bond for title.  Smith took with notice of all imperfections in his grantor's title.  *Gaines* v. *Summers,* 50 Ark. 322; *Haskell* v. *State,* 31 Ark. 91; *Miller* v. *Fraley,* 23 Ark. 736.

His possession was that of his grantor and as such was subordinate to appellant's title.  *Lewis* v. *Boskin,* 27 Ark. 61; *Shall* v. *Biscoe,* 18 Ark. 142; *Moore* v. *Anders,* 14 Ark. 628.

In the case of *Perry* v. *Arkadelphia Lumber Co.,* 83 Ark. 374, the court quoted with approval the following language from the case of *Tillar* v. *Clayton,* 76 Ark. 405: ''The statute of limitations does not run against a vendor in favor of a vendee, holding under a contract for sale and purchase; nor does it run where the original possession of the holder seeking to plead the statute was in privity with the rightful owner until there be an open and explicit disavowal and disclaimer of holding under that title and assertion of title brought home to the other party.''  There are many cases to the same effect.

We are also of the opinion that the appellant's right to maintain this suit is not barred by laches.  ''Mere delay is not always laches and laches in the assertion of a right is not always sufficient to defeat it.  The laches must be such as to afford a reasonable presumption of satisfaction or abandonment of the claim, or such as to prevent a proper defense by reason of the death of parties, loss of evidence or otherwise.''  *William Seldens, Exr.,* v. *Kennedy,* 7 A. & E. Cases, 879.  *Davis* v. *Harrell,* 101 Ark. 235, and cases cited.  Here the law charged appellee with the knowledge of the bond for title because it was in the chain of his title.  *Gaines* v. *Summers, supra; Stephens* v. *Shannon,* 43 Ark. 464.  And even though appellant had actual knowledge of Smith's possession, it had the right to presume this possession was in subordination to its title until knowledge to the contrary was brought home to it, and the continued tax payments

by appellant necessarily indicated it had not abandoned its claim against the land.

The decree of the chancellor is therefore reversed and the cause is remanded with directions to enter a decree for the amount of the purchase money due appel- lant with the interest thereon, and taxes paid by it with interest on each payment from the date it was made, with directions to sell said lands if said sums are not paid within a reasonable time to be fixed by the court.