ALMA A. DUNTZ, Executrix, Appellee, v. AMES CEMETERY ASSO-
CIATION, Appellee, et al., Appellant.

**MUNICIPAL CORPORATIONS:** Powers—Implied Assumption of Pay-
ment of Property. A city which, under a quitclaim deed, takes over
the property of a private cemetery association and continues its
use for cemetery purposes, thereby assumes the payment of deferred
installments on the purchase price of said property.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

FEBRUARY 7, 1922.

ACTION in equity for judgment for an unpaid balance of
the purchase price of a land contract, and for decree of fore-
closure on said contract. The trial court found in favor of the
plaintiff and the defendant city of Ames appeals.—*Affirmed.*

*John Y. Luke,* for appellant.

*Lee & Garfield,* for appellee.

DE GRAFF, J.—The defendant Ames Cemetery Association
is a corporation organized not for pecuniary profit. It main-
tained and operated a cemetery in the city of Ames, Iowa. On
August 27, 1914 the association entered into a written contract
with C. A. Duntz to purchase from him for cemetery purposes
a certain tract of land adjoining the old cemetery for the sum
of $2,000. It paid to Duntz $500 on the execution of the con-
tract and agreed to pay the balance with interest at 6 per cent
on or before the 1st day of September, 1919.

The Cemetery Association thereafter sold and conveyed all
of its property including its equity in said lot to the city of
Ames, and in consideration thereof as is alleged in plaintiff's
petition the said city assumed and agreed to pay all debts and
obligations of the cemetery association.

The Duntz contract provided for the execution of a war-
ranty deed to the land and that the same should be deposited in
escrow in the Union National Bank together with the abstract
of title. This was done.

In the summer of 1916 the association entered into negotiations with the city of Ames looking to the transfer of all the property and assets of the association to said city. The initial meeting was held in the city council chambers between the directors of the cemetery association and a committee of the city council which had the matter in charge. These preliminaries were prompted on behalf of the association by reason of the death of several of its directors, and for the further reason that the association felt that its purposes and objects would be better served through city management. The president of the association testified:

"The talk [with the committee] was that, if the cemetery association would turn over all their property to the city and have them do the work that the cemetery association had been doing, and keep the records in the city clerk's office where we could have good records which we hadn't had, it would be a great benefit to the community. * * * We had this committee meeting for the purpose of seeing if we could not arrange to make this transfer at this time. We believed that our affairs were in such a condition that would warrant the city in taking over this property and carrying all the work as a city department."

He further testified that all the property was mentioned, the obligations were discussed, and "it was all understood and referred to, and the committee was advised of the amount that was still due on the new cemetery."

The minutes of the directors show the following:

"Moved and seconded that in consideration of the city of Ames, Iowa agreeing to maintain a cemetery, the Ames Cemetery Association hereby authorizes its president and secretary to quitclaim deed to the city of Ames all their rights and interest to unsold lots in the present cemetery including Lot 1, Block 3, Ives' Addition to Ames, Iowa."

The latter description was the Duntz lot.

Deeds were executed by the proper officers of the association transferring title to the city of all real estate then owned by the association. At a meeting of the city council of Ames on July 17, 1916 it was moved and carried that "it is the sentiment of this council to act favorably in the matter of the city

taking over the cemetery when the cemetery association takes the proper steps to convey the same to the city.'' No formal ordinance or resolution was passed by the council. The subject had been previously discussed and acted upon by the council prior to this time by the appointment of a committee to investigate, and by a reference of the matter at one meeting to the public building and park committee for report as to the advisability of taking over the cemetery.

Two deeds were executed and delivered to the city. One a warranty deed conveying the land known as the old cemetery, and the other a quitclaim deed conveying what is called the new cemetery or the Duntz lot. The warranty deed contains this language:

''In consideration of the sum of agreeing to maintain the same, which shall include both old and new cemeteries, as agreed by the city of Ames.''

The association transferred all of its property both real and personal to the city of Ames. The deeds in question were delivered to the city clerk and accepted by him. The clerk testified that the matter was pending in the council at the time the deeds were delivered which was shortly after the favorable action by the council heretofore mentioned. After the acceptance of the deeds the new cemetery was rented, lots were sold in the old cemetery and moneys collected on the sale and rentals of the land. The city council also through a committee attempted to sell or exchange the Duntz lot for other real estate lying to the north of the cemetery. The city also constructed special improvements around the Duntz lot by curbing, guttering, paving and sewering. These improvements were assessed to this lot and amounted to two and one-half times the consideration of the original contract of sale. It is also shown that the mayor and city clerk signed waivers of objection in which they agreed to pay the assessments and this fact was brought to the attention of the city council.

It further appears that subsequently to the execution and delivery of the deeds to the city of Ames the council duly enacted and published an ordinance which contained the rules and regulations for the use and maintenance of the property belonging formerly to the cemetery association.

The appellee contends in answer to the claims of appellant that the decree entered by the trial court should be affirmed for the following reasons: (1)  The preponderance of the evidence shows that the city of Ames assumed the liability of the cemetery association to plaintiff.  (2)  The defendant city has received and accepted the benefits of its transaction with the cemetery association and is bound by its burdens.'  (3)  The defendant city is given power by statute to purchase land for cemetery purposes and cannot by reason of all the circumstances surrounding the transaction, take advantage of any informality in its own proceedings.  (4)  The conduct of all the parties and especially of the defendant city in accepting deeds to the cemetery property imposes the obligation on the city to the plaintiff.  (5)  The equities of the cause are with the plaintiff.

A city has statutory power to purchase land for cemetery purposes and to maintain cemeteries.  Code Sections 697 and 880.  This proposition does not admit of debate.

It may also be said that municipal corporations may contract by parol through their agents the same as individuals. *City of Indianola v. Jones,* 29 Iowa 282; *Duncombe v. City of Fort Dodge,* 38 Iowa 281.

The contract in the instant case is not *ultra vires.*  A clear distinction exists between contracts outside of the powers conferred upon a city and contracts within the general scope of the powers conferred, but which have been irregularly exercised.  If the conduct of a municipal corporation through its officers and agents shows a ratification and the acceptance of benefits, it is estopped to deny liability.  There was no vital infirmity in the adoption of the contract in question, and if an irregularity did exist, it was such that could have found a remedy by subsequent formal proceedings of the council.  The cemetery association dealt with the defendant city in good faith and surrendered things of value for the benefit of said city.  This being true a mere irregularity in the exercise of the power conferred cannot be interposed.  Equity will require, independently of an express contract, that the defendant city under the circumstances shall do justice and will impose an obligation upon the city in this respect.  As bearing upon the general proposition, see *City of Ida Grove v. Ida Grove Armory Co.,* 146 Iowa 690; *Hansen v.*

*Town of Anthon,* 187 Iowa 51; *Marion Water Co. v. City of Marion,* 121 Iowa 306; *First Nat. Bank v. Village of Goodhue,* 120 Minn. 362 (139 N. W. 599); *Rogers v. City of Omaha,* 76 Neb. 187 (107 N. W. 214); *Central B. Pav. Co. v. City of Mt. Clemens,* 143 Mich. 259 (106 N. W. 888).

The defendant city is not in a position to claim that in the absence of an express undertaking the assignee of a written contract is not held to have assumed the obligations of the assignor. True the Duntz contract was not formally assigned to the city, but it did accept a quitclaim deed to the land covered by the contract. The grantee under a quitclaim is conclusively presumed to have knowledge of all prior equities, and takes subject thereto. *Steele & Son v. Sioux Valley Bank,* 79 Iowa 339. The quitclaim deed of the association to the city conveyed such rights as the association had in the land. One of the rights was to receive a deed from the vendor upon the payment of the purchase money. This right was conveyed to the city and the deed and title contemplated by the contract was tendered to the city. The cemetery association performed its every obligation. The association in equity was the owner of this property. *In re Estate of Miller,* 142 Iowa 563; *O'Brien v. Paulsen,* 192 Iowa 1351.

Clearly when the association quitclaimed to the city all of its rights and interests in the land covered by the Duntz contract the grantee city became clothed with power to enforce the liability of the vendor named in the contract and the relations became mutually obligatory. See *Little Rock & F. S. R. Co. v. Rankin,* 107 Ark. 487 (156 S. W. 431). We do not deem this objection on the part of appellant as controlling, but see *Wightman v. Spofford,* 56 Iowa 145; *Senninger v. Rowley,* 138 Iowa 617.

The defendant city has received and accepted and still holds substantial benefits under its transaction with the cemetery association. In the light of the record presented justice and equity require the city to assume the liability and to be bound by the burdens incidental to the contracts involved. The judgment entered by the trial court is therefore—*Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.