McHUGH *v.* JEFFRIES, GUARDIAN.

4-7458                                    183 S. W. 2d 309

Opinion delivered November 13, 1944.

*U. A. Gentry,* for appellant.

*Price Shofner* and *June P. Wooten,* for appellee.

HOLT, J. This litigation involves the title to an eighty-acre tract of land in Pulaski county and two city lots in Adams' Addition to Little Rock. The essential facts are: The tract of land and lots forfeited to the State for the taxes for 1931. July 21, 1936, J. M. Ashton, for a consideration of $81, purchased the farm tract from the State and thereafter, October 9, 1936, Alice McHugh, appellant, purchased this eighty-acre tract from Ashton for a consideration of $115, and on September 30, 1936, she secured a deed from the State to the two city lots for a consideration of $43.05. At the time the farm and city lots forfeited for the nonpayment of taxes, they were owned by J. A. Comer and were claimed and controlled by him as owner when his death occurred August 5, 1935. J. A. Comer left two incompetent sons as surviving heirs, James Omer Comer, 38 years of age, and Eben D. Comer, 36 years of age, both being insane. August 17, 1935, O. J.

892

Comer, brother of the deceased, James A. Comer, was appointed administrator of J. A. Comer's estate and on August 23, 1935, O. J. Comer also became guardian of the two incompetent sons of J. A. Comer. O. J. Comer acted as guardian until his death July 3, 1938. His first annual report as guardian showed disbursements which consumed all receipts except $811.38. His second report showed that during the second year of his guardianship, he expended all but $405.92 of receipts, and July 12, 1938, a third annual report, prepared and filed shortly after O. J. Comer's death by appellant, Alice McHugh, showed a balance in the guardianship account of sixteen cents above expenditures.

Following the death of O. J. Comer, Alice McHugh succeeded him as guardian and as such guardian attached to the third report, *supra,* which she prepared and filed, the following affidavit: "I, Alice McHugh, state on oath that I was the private secretary of the late O. J. Comer, who was heretofore appointed guardian of the above named incompetents, and that the said O. J. Comer departed this life on the 3rd day of July, 1938, and while I was his secretary I was familiar with all the dealings he had with and on behalf of said wards, and that I kept his books and that the foregoing report was prepared during his lifetime, and was not filed because of his sudden illness. I certify that the report hereinabove is correct according to the books of said estate, and that the same reflect all receipts and disbursements." Miss McHugh was removed as guardian September 21, 1943, and appellee, Jeffries, succeeded her.

About 1932, appellant became associated with O. J. Comer in the furniture business as a principal stockholder in the Comer Furniture Exchange, Inc. Some time prior to August 23, 1935, when O. J. Comer became guardian of his brother's incompetent sons and until his guardianship terminated on his death July 3, 1938, Miss McHugh, appellant, had been and was his secretary and knew intimately the details of his guardianship dealings with the two incompetent wards. She testified: "Q. Now you were in daily contact, practically, with these boys,

They were coming in there. Who drew most of the checks? A. In other words, for this guardianship for Mr. Comer? A. I drew most of the checks. Q. And paid most of the bills? A. Yes. Q. You were familiar with most of the transactions of the guardianship? A. Yes.'' She knew the farm and city lots formerly belonged to James A. Comer, that the two incompetents were his heirs, and was thoroughly familiar with the farm and city property.

At the time the farm tract and city lots forfeited for the nonpayment of taxes, and at the time appellant purchased from the State's grantee, Ashton, the farm tract, and the lots from the State, appellant knew that O. J. Comer, the then guardian, had in his guardianship account ample funds out of which to pay the taxes, but that he had refused to pay the taxes and protect the interests of his incompetent wards.

In these circumstances, Ira F. Jeffries, the present guardian of the two incompetent heirs of James A. Comer, brought this suit, (1) seeking a decree from the court declaring the acquisition of the farm tract and the two city lots by appellant, Alice McHugh, to be a redemption, or trust, for their benefit for the reason that at the time she acquired the property she stood in such a fiduciary relation to appellee's wards as to preclude her from acquiring the titles for her own account; (2) and appellee also asked for a writ of assistance against John Evans, who had possession of the lots in question.

The trial court found all issues in favor of appellee, except his prayer for writ of assistance, which was denied on the ground that the court was without jurisdiction as to John Evans. The cause is presented here on appellant's direct appeal, and appellee's cross-appeal from that part of the decree denying the writ of assistance.

After a careful review of the record, we are of the opinion that the decree is in all things correct. The primary question for determination is whether Alice McHugh, at the time she purchased the farm tract and the two city lots, occupied such a fiduciary relation to the two incompetent heirs of J. A. Comer as to preclude her from acquiring the title to these properties.

(1) The situation here briefly and simply stated is: Appellant, while acting as the secretary of O. J. Comer, during the term of his guardianship of two incompetent wards, gained vital information concerning the property of these incompetents that enabled her to buy, on her own account, for a nominal sum, valuable property belonging to them. While appellant was not in fact their guardian at the time, she, as the secretary of the guardian, O. J. Comer, was occupying such a confidential relationship and trust to him and his wards as would make her position a fiduciary or *quasi*-fiduciary one. In other words, while appellant, as stated, was not the actual guardian at the time she acquired the property of these incompetents, we hold that, in the circumstances here, she was by virtue of her relationship to the real guardian in effect their *quasi*-guardian, and as such could not take any advantage of their interests. Courts should and do guard and protect, with jealous care, the rights of infants and incompetents. In such circumstances, we hold, as did the trial court, that she could not acquire the properties involved here on her own account, but that she held in trust, for the benefit of the two incompetents.

We think the principles of law announced in *Hindman* v. *O'Connor*, 54 Ark. 627, 16 S. W. 1052, 13 L. R. A. 490, apply here. There this court said: "As a general rule, a party occupying a relation of trust or confidence to another is, in equity, bound to abstain from doing everything which can place him in a position inconsistent with the duty or trust such relation imposes on him, or which has a tendency to interfere with the discharge of such duty. Upon this principle no one placed in a situation of trust or confidence in reference to the subject of a sale can be the purchaser, on his own account, of the property sold. If such a one purchase the property, it is in the option of the person interested in the property, and to whom the relation of trust or confidence was sustained, to set aside the sale within a reasonable time, however innocent the purchaser may be. 1 Story, Eq., §§ 307-323, and cases cited. . . . The rule is not confined to persons who are trustees within the more limited and technical signification of the term, or to any particular class of

fiduciaries, but applies to all persons placed in a situation of trust or confidence with reference to the subject of the purchase. It embraces all that come within its principle, . . . The law forbids a trustee, and all other persons occupying a fiduciary or *quasi*-fiduciary position, from taking any personal advantage, touching the thing or subject as to which such fiduciary position exists. . . . *Quasi*-guardians and all other persons occupying the relation of confidential advisers have been held to come within the rule. *Revett* v. *Harvey,* 1 Sim. & S. 502; (S. C.) 1 Eng. Ch. Rep., 502; *Huguenin* v. *Basely,* 14 Vesey, 273; 1 Story's Eq. (13th ed.), §§ 317-319, and cases cited; 1 Perry on Trusts, § 204; *Torrey* v. *Bank of Orleans, 9* Paige, 663; Underhill on Trusts, p. 293. In *Hobday* v. *Peters,* 28 Beav., 349, a mortgagor consulted a solicitor 'who turned her over to his clerk to assist her gratuitously.' The clerk, by reason of information derived during such employment, bought up the mortgage for less than half the amount due thereon. The court held that the clerk was a trustee for the benefit of the mortgagor. The same was held as to the clerk of a broker employed to make sale of land, in *Gardner* v. *Ogden,* 22 N. Y. 327, 78 Am. Dec. 192. . . . If the trustee, or other person having a confidential character, can buy in an honest case, he may in a case having that appearance, but which may be grossly otherwise; and yet the power of the court, because of the infirmity of human testimony, would not be equal to detect the deception. It is to guard against this uncertainty and the hazard of abuse, and to remove the trustee and other persons having confidential relations from temptation, that the rule does and will permit the *cestui que trust* or other person to come at his option, and without showing actual injury or fraud, have the sale set aside. (Citing many authorities.)''

(2) The trial court denied appellee's petition for a writ of assistance on the ground that John Evans was not a party to the suit and therefore the court was without jurisdiction. We find no error here.

The decree is affirmed.