Evans *v.* Jeffries, Guardian.

4-7987                                            198 S. W. 2d 62

Opinion delivered December 2, 1946.

808

*U. A. Gentry,* for appellant.

*Price Shofner, June P. Wooten* and *John S. Gatewood,* for appellee.

SMITH, J. In the case of *McHugh* v. *Jeffries,* reported in 207 Ark. 890, 183 S. W. 2d 309, it was held that the appellant, Miss McHugh, held title to certain lands and lots under a tax deed, as trustee for the two incompetent heirs at law of J. A. Comer, deceased. At the conclusion of the trial, from which came that appeal, a petition was filed for a writ of assistance to dispossess one John Evans from the possession of the property there in litigation, which petition was denied upon the ground that Evans was not a party to the suit, and the court was therefore without jurisdiction to award that relief. The decree in that case vested title in the incompetent heirs.

Thereafter suit in unlawful detainer was filed by the guardian of the incompetent heirs to dispossess Evans from the property, it being alleged that by reason of the decree in the former case the title had been divested out of Miss McHugh and vested in the incompetents. Inasmuch as Evans was not a party to that case, it has no binding effect upon him.

A motion was filed by Evans in this case, praying that it be transferred to equity, and an answer was filed praying that the complaint be dismissed, and that the title of the defendant Evans be quieted and confirmed. The cause was transferred on this motion and thereafter the suit proceeded as one to try the title. Upon the trial a decree was rendered holding that these heirs were the owners of the lots here in question, and that Evans was unlawfully in the possession of them and had refused to surrender possession upon demand, and that Evans was due the plaintiffs the sum of $42 as rent, and from the decree awarding plaintiffs the possession of the lots and rendering judgment for rents is this appeal.

Evans testified that he entered into a contract in 1925 or 1926 with J. A. Comer, the father of the incompetent plaintiffs, who sue by their guardian, for the purchase of the lots here in question. Evans testified that by the terms of his contract, which was in writing, but was retained by Comer and never given to him, he agreed to pay Comer $1,000 for the lots, of which sum he paid $250 in cash, the balance to be paid in installments of $10 per month. He further testified that he made the payments, not always promptly, but that if he missed a payment one month he "doubled up" the next month. If Evans ever had a contract, as stated, it was not offered in evidence.

Evans does not claim ever to have paid any taxes, his testimony being that Comer agreed to pay the taxes and charge him with the amounts thereof, to be repaid out of the monthly payments made Comer. It is undisputed that Evans entered into possession of the lots

about the time he claims to have purchased them, and that he has since continuously been in possession of them. He gave a retaining bond when the writ of possession in the unlawful detainer case was served upon him, and after the rendition of the decree from which is this appeal, he executed a supersedeas bond and has remained in possession.

Evans further testified that after Miss McHugh acquired the tax title, which was canceled on the former appeal above referred to, she advised him that he had lost his title and that she had acquired it. She proposed to sell him the lots for $200 to be paid for at the rate of $6 per month, and she later executed to him a quit claim deed for the recited consideration of $1 paid her. This deed was dated April 28, 1942.

Miss McHugh and Jeffries, now guardian for the incompetents, were both employed by the Comer Furniture Company, a business owned by a brother of J. A. Comer who by his will had appointed this brother executor of his estate. This will directed the executor to appropriate any and all rents collected to the use of the incompetents. Jeffries testified that Evans came to the place where both he and Miss McHugh were employed, and that in the absence of Miss McHugh, Evans made numerous payments to him for the account of Miss McHugh, for all of which he gave receipts reciting that the payments were made as rent of the lots.

Evans denied that he had ever paid any sum as rent, although the payments were so designated on the receipts given him by Jeffries, and that all the payments were made to apply on the purchase price due Miss McHugh, and eventuated in her giving him a deed.

We would have no hesitancy in holding that the testimony does not show that Evans had purchased the lots from Comer, but for a certain paper writing which appears to show that Evans took possession of the lots as purchaser, and not as tenant. The writing is to the following effect: Comer had Evans make application to the Home Owners' Loan Corp. for a loan of $1,200,

and in that connection Comer filled out a blank used by the Home Owners' Loan Corp. entitled "Mortgagee's Consent to Take Bonds." This instrument signed by Comer bears date of May 31, 1934, and recites that, "The undersigned is a holder of a first mortgage or other obligation, which constitutes a lien or claim on the title to the home property of John Evans located at 2218 Rice, Little Rock, Arkansas, in the sum of $1,250 including unpaid balance of principal and interest, to date." The property described is the property in litigation.

After inspection of the property, the Home Owners' Loan Corp. reported that a loan in excess of $650 could not be made, from which loan, if made, $250 would be deducted for necessary repairs. The application was not pursued further.

No one could know better than Comer, who died in 1935, what his relationship to Evans was, and this declaration by the owner, through whom plaintiff's claim title, appears conclusive that Evans was in possession of the property, not as a tenant, but as a purchaser.

We do not think that this relationship was destroyed by Evans' agreement to purchase the lots from Miss McHugh. He testified that he was advised by her that he had lost his title, and he proceeded to re-acquire it. There is no element of estoppel in this contract with Miss McHugh. See § 121, p. 394, Ch. Estoppel, 31 C. J. S., and cases there cited.

Now Evans claims that when he contracted with Miss McHugh to purchase the lots from her, he had already paid the full amount of the purchase money due Comer. He testified that Comer so advised him and appointed a day on which he would execute and deliver a deed, but Comer died before that date, and the deed was never executed.

We do not credit this testimony. If Evans made the payments which he testified he did make, he would have completed his payments exclusive of taxes in 1932, and Comer did not die until August 5, 1935. Evans pro-

duced no receipts for any payments and, but for the writing signed by Comer above referred to in connection with the application for a Home Owners' Loan Corp. loan, we would hold that Evans had not proved a contract to purchase the lots.

Now if it is held, and we do hold, that this writing proves that Evans was in possession as purchaser and not as tenant, it proves also that on the date of that writing, to-wit, May 31, 1934, a balance of $1,250 purchase money was due at that time.

We hold, therefore, that Evans was in possession as a purchaser and not as a tenant, but we hold also that he owed a balance of $1,250 purchase money on May 31, 1934. He does not claim to have made any payments, except to Miss McHugh, subsequent to that date, nor does he claim ever to have paid any taxes.

The decree of the court below will, therefore, be reversed for further proceedings as follows: Evans will be charged with $1,250, balance of unpaid purchase money, with interest thereon at 6% from May 31, 1934. He will also be charged with all taxes since 1934 except those paid by Miss McHugh, and judgment will be rendered for the balance of purchase money and interest, for taxes as stated, with interest thereon from date of payment, and a lien on the land will be declared for the total amount of these items, and a reasonable time will be allowed to discharge this lien, with directions to sell the land if the lien is not satisfied within the time limited.

Evans pleaded the Statute of Limitations, but this plea cannot be sustained. The holding in *Little Rock & Ft. Smith Ry. Co.* v. *Rankin*, 107 Ark. 487, 156 S. W. 431, is to the contrary. The facts in that case were that the railroad company entered into a contract to convey a tract of land to one Rankin for a cash consideration and certain deferred payments. This contract was dated January 2, 1891. Rankin entered into and remained in possession of the land under this contract until December 25, 1896, when he conveyed the land to one Smith,

who took possession and was in possession claiming title at the time the suit was filed to enforce the vendor's lien which the railroad company claimed. Smith knew nothing of Rankin's contract and claimed to be an innocent purchaser, but it was held he was affected with notice of the Rankin title, as this contract was in Rankin's chain of title. Smith had possession for about ten years prior to the filing of this suit to enforce the vendor's lien for the payment of the purchase money, and pleaded the Statute of Limitations against the debt, which plea was not sustained.

It was held that the deed from Rankin conveyed no greater title or right than Rankin had, and this right was to receive a deed upon payment of the purchase money. Such was Evans' contract, as he did not claim the right to have a deed made to him until he had completed his payments. His contention was that he had completed them. It was held in the case cited that Smith's possession was that of his grantor and as such was subordinate to the lien of the railroad company. It was there said: "In the case of *Perry* v. *Arkadelphia Lbr. Co.*, 83 Ark. 374, 103 S. W. 724, the court quoted with approval the following language from the case of *Tillar* v. *Clayton*, 76 Ark. 405, 88 S. W. 972: 'The statute of limitations does not run against a vendor in favor of a vendee, holding under a contract for sale and purchase; nor does it run where the original possession of the holder seeking to plead the statute was in privity with the rightful owner until there be an open and explicit disavowal and disclaimer of holding under that title and assertion of title brought home to the other party.' There are many cases to the same effect."

Here there is no intervening third party, but Evans could have no greater right than a third party would have had. Evans is claiming under a contract of purchase which he has not performed, and he may not therefore claim the debt was barred and at the same time assert title as his right to the title was dependant upon payments which he did not complete.

Appellees say that the Statute of Limitations **would** in no event be applicable for the reason that the **heirs** are mentally incompetent. This would not be true if the statute otherwise applied, for the reason that if it ran at all it was in motion in the lifetime of the ancestor of the incompetents through whom they claim title and was not arrested by his death. *Bozeman* v. *Browning*, 31 Ark. 365.

If this suit was merely one to enforce a vendor's lien, we would have to hold that the suit was barred inasmuch as the debt was barred by the Statute of Limitations. Section 9465, Pope's Digest, would require this holding. This section provides that in suits to foreclose or enforce mortgages, deeds of trust or vendor's liens, it is a sufficient defense that the suit had not been brought within the period of limitations prescribed by law for a suit on the debt or liability for the security of which they were given.

But this case has some very unusual features. Now Evans did not testify that he made application for a loan from the H. O. L. C., and we may only conjecture what Comer had in mind in signing the agreement to accept bonds from the H. O. L. C. for the loan. But as we have said, we would have no hesitancy in holding that Evans had not proved a contract to buy the lots but for this agreement signed by Comer. Considered by itself, the testimony of Evans is too unreasonable to be credited. He admits he was aware of the pendency of the suit against Miss McHugh in which it was sought to cancel the title which he claims he had purchased from her, and he permitted that suit to proceed to final decree without intervening or denying that the plaintiffs had the right to cancel the title which he had purchased from Miss McHugh.

The cause was transferred to equity on Evans' own motion, upon his prayer that his title be quieted and that he be given judgment for the payments made by him to Miss McHugh. But while he asks equitable relief, he does not offer to do equity. He asks that he be

adjudged to be the owner of the lots without paying for them.

The issue joined in the court below was whether Evans had a contract which, if performed, would have entitled him to a deed. He contended that he had such a contract, and had performed the conditions precedent by making the payments which it required to secure a deed. On the other hand, it was denied that he had such contract. To prove that he was in possession as a purchaser he must rely upon a contract which he has not performed, and he asks in equity that he be given the benefit of a contract which he has not performed, in other words, that he be given the lots without paying for them. We think § 9465, Pope's Digest, above referred to, does not apply to a situation such as we have here. Evans will be granted the equitable relief for which he prays, but this relief is granted upon condition that he do equity, that is, that he perform the contract upon which he must rely to obtain any relief.

Evans prays also that he be given judgment for the amount he paid Miss McHugh to acquire the tax title, but this relief will be denied upon the ground that if he was in possession as purchaser, as he claims to have been, it was his duty to pay the taxes and he is given all the relief to which he is entitled when he is not charged with those taxes.

The decree is reversed under the directions above recited.

Ed. F. McFaddin, Justice, concurring. I reach the same result as does the majority; but I differ from the majority as regards the issue of limitations. The majority holds that the plea of limitations is not available to Evans, since § 9465, Pope's Digest, does not apply to this situation. It is unnecessary, I think, to distinguish the situation in the case at bar from the § 9465, because I think the Evans payment of $200 to Miss McHugh constituted a tolling of the statute of limitations.

To elaborate: Evans testified (a) that he trusted Comer to pay the taxes; (b) that he was to repay Comer

816

for the taxes; and (c) that when he found that Comer had not paid the taxes, he paid Miss McHugh the $200 which she demanded for the tax title.

We held in the case of *McHugh* v. *Jeffries,* 207 Ark. 890, 183 S. W. 2d 309, that Miss McHugh was a trustee for the Comer estate. So, it appears to me that the $200 paid by Evans to Miss McHugh was in reality a payment to Comer's estate for taxes, which Evans testified that he had agreed to pay to Comer. Thus, the payment of the $200 to Miss McHugh by Evans would constitute a tolling of the statute of limtations, even if § 9465, Pope's Digest applied.