H. P. T. HANSEN, Appellant, v. TOWN OF ANTHON, Appellee.

MUNICIPAL CORPORATIONS: Public Improvements—Method of
1 Making Contract—Action of Council. Where, under Sec. 683,
Code Supp., 1913, a motion to enter into a contract with the
plaintiff could only have been carried by a vote of four mem-
bers of the town council, or by three members and the mayor,
and the record of the meeting showed that three members
of the council voted in the affirmative, and recited, "Noes, none,"
and the mayor declared the motion carried, and in pursuance
thereto signed a contract, held that the mayor's vote therefor
was not wanting because of lack of formality, and that the mo-
tion was legally carried, and the contract was valid.

APPEAL AND ERROR: Review—Scope and Extent in General—
2 Theory in Lower Court. In the Supreme Court, the theory upon
which the case was tried below will be adopted, as against the
appellant.

MUNICIPAL CORPORATIONS: Public Improvements—Ratification
3 of Contract. A contract by a town which had not been for-
mally adopted, on account of not receiving sufficient votes in the
council, under Sec. 683, Code Supp., 1913, could be ratified by
the conduct of the council, pursuant to its purported adoption
of such motion, in so far as such conduct was in good faith,
and to the interest of the city.

MUNICIPAL CORPORATIONS: Public Improvements — Irregular
4 Adoption of Contract—Quantum Meruit. A contract with a
town, calling for the erection of a power house, was irregular,
in that it had not received the number of votes required under
Sec. 683, Code Supp., 1913. The contract, however, was rati-
fied by the council by putting the plaintiff in possession of the
ground on which the power house contracted for was to be
erected, and, for several weeks, under their supervision, he
furnished labor and material, and the walls were fully con-
structed and were ready for the roof. After having repudiated
the contract, the town, at the same time, claimed the right to
use one of the walls so constructed as one of the walls of its
pumping station, and never relinquished such claim. Held,
plaintiff was entitled to recover on *quantum meruit* for the
work done.

ESTOPPEL: Equitable Estoppel—Evidence. Evidence reviewed, and held not to show an estoppel against plaintiff.

*Appeal from Woodbury District Court.*—J. W. ANDERSON, Judge.

SEPTEMBER 24, 1919.

ACTION for damages for breach of contract. The measure of damages claimed is the value of work done and materials furnished upon the contract before it was breached by defendant. Estoppel is pleaded by both parties. There was a trial to the court, and a judgment dismissing the petition. The plaintiff appeals.—*Reversed.*

*Henderson, Fribourg & Hatfield,* for appellant.

*Prichard & Prichard* and *C. N. Jepson,* for appellee.

EVANS, J.—I. The town of Anthon, defendant, advertised for bids for the erection of an electric power house. The plaintiff was the lowest bidder. A formal contract was entered into with him on December 5, 1916, duly signed by the mayor and clerk on the part of the defendant town, and by Hansen in his own behalf. Pursuant thereto, Hansen proceeded to the erection of the power house upon the ground of the defendant, and expended a large amount of money for labor and materials therefor.

On January 13th following, the city council passed an order repudiating the contract, and denying its own authority to enter into the same, and served notice accordingly upon Hansen, coupled with a demand that he desist from further performance of the alleged contract. Pursuant to such demand, the plaintiff did desist. The events transpiring subsequently, upon which defendant relies for an estoppel, will be considered in another division.

We will consider first the question of the right of the plaintiff as of the time of the alleged breach of the contract.

There is some confusion in the record as to whether the action should be deemed one for damages for breach of contract or one for *quantum meruit* for the value of services rendered. The question itself upon this record is not a very material one; because, if the plaintiff is entitled to damages, the only measure of such damages as he claims is the *quantum meruit*. The ultimate question, therefore, in any event is, Is he entitled to the *quantum meruit?*

The ground upon which the town council repudiated the contract was that it, itself, had entered into the same illegally, in that it had failed to conform to the requirements of Section 683 of the Code, which section is as follows:

1. MUNICIPAL COR-PORATIONS: public improvements: method of making contract: action of council.

"No resolution or ordinance for any of the purposes hereinafter set forth shall be adopted without the concurrence of a majority of the whole number of members elected to the council, to wit:

"1. To pass or adopt any by-law or ordinance;

"2. To pass or adopt any resolution or order to enter into a contract;

"3. To pass or adopt any ordinance for the appropriation or payment of money; but in towns, by-laws, ordinances, and the resolutions and orders set forth in this section shall require for their passage or adoption a concurrence of four councilmen, or of three councilmen and the mayor. On the passage or adoption of every by-law, ordinance, and every such resolution or order, the yeas and nays shall be called and recorded. No money shall be appropriated except by ordinance."

The town council consisted of five members. On December 4th, a meeting was had, which was attended by four members and the mayor. At this meeting, a motion was made that a contract be entered into with the plaintiff. This motion, being put by the mayor, presiding, re-

sulted in a tie vote, two and two. The mayor cast a yea
vote, and declared the motion carried. Thereupon, the
meeting adjourned until the following day. Under the
provisions of the statute above quoted, it was essential,
in order to justify the declaration by the mayor of the
adoption of the motion, that it should have been voted for
either by four councilmen or by three councilmen and the
mayor. It must be said, therefore, that the motion was not
carried, and we may regard the proceedings of the coun-
cil at that meeting as a mere nullity. On the following
day, however, the council convened in its adjourned meet-
ing, the same four members being present. A motion was
there made that the mayor and clerk be instructed to sign
the contract with Hansen. This motion being put, three
members of the council voted yea, and were so recorded.
The other two members of the council were recorded as
absent, though one of them was present. The mayor de-
clared the motion carried, and pursuant thereto, signed a
contract with the plaintiff. It does not appear that the
mayor voted, in a formal sense. The question arising at
this point, therefore, is whether, upon this record, the
mayor should be deemed to have voted in the affirmative.
The record of the meeting recites that there were, "Noes,
none." It appears from the record, therefore, that the
mayor did not vote in the negative. Under the provisions
of the statute above quoted, this motion could be carried
only by the vote of four members of the council, or by that
of three members of the council and that of the mayor.
Three members of the council having recorded their vote
in the affirmative, the adoption of the motion rested whol-
ly with the mayor. He could defeat it by a negative vote,
and carry it by an affirmative vote. It was his clear duty
to vote, one way or the other. To declare the motion adopt-
ed was, impliedly at least, a declaration of his own vote.
We think it would be unduly technical to hold, under such

circumstances as presented herein, that the mayor's vote was wanting, for lack of formality. The motion, therefore, was legally carried, and the contract pursuant thereto was valid.

II. Our foregoing conclusion would be decisive of this feature of the case, were it not for the fact that plaintiff predicated his petition, not upon the actual validity of such proceedings of the council, but upon subsequent estoppel by ratification. Such being the theory upon which the case was tried, we should, as against the appellant, adopt the same here. Two questions, therefore, arise: (1) Could the town, through its council, ratify the contract, if originally invalid? and (2) did it so ratify?

2. APPEAL AND ERROR : review : scope and extent in general : theory in lower court.

In our view of the record, the question of *ultra vires* does not enter deeply into the case. No actual want of power in the town to make such a contract is involved. Only the procedure is assailed. The purported contract was one which the council could have made by proper procedure. Assuming that the irregularity in the manner of adopting the motion created an infirmity in the contract, yet the infirmity was one which could have been remedied by subsequent formal proceedings by the council. It could have been so remedied by the vote of the same three members and of the mayor. We think it equally clear that the municipality was not wholly powerless to ratify the contract by the conduct of its council pursuant to its purported adoption of such motion, in so far as such conduct was in good faith, in the interest of the city. The irregularity, such as it was, was not substantial. At most, it was only formal and doubtful. Our first question, therefore, we answer in the affirmative.

3. MUNICIPAL CORPORATIONS : public improvements : ratification of contract.

Pursuant to the purported adoption of the motion, the

mayor and clerk, with the knowledge of the council, entered into a contract with plaintiff which, by its terms, bound

4. MUNICIPAL COR-
PORATIONS: pub-
lic improve-
ments: irreg-
ular adoption
of contract:
*quantum meruit.*

him to construct a power house for the defendant upon its ground. At that time, the mayor and the members of the council knew the facts which constituted the irregularity in the adoption of their motion. If they then appreciated the legal effect to be what they now claim, then they perpetrated an intentional fraud on plaintiff in entering into the contract at all. It is only fair to them to assume that they did not then appreciate the legal effect as being what they now claim. And yet the resulting injury to plaintiff and benefit to defendant are precisely the same. The plaintiff believed in good faith that he had bound himself to construct the house. The members of the council knew that he so believed. They put him in possession of the ground upon which it was to be erected. For several weeks, under their supervision, he furnished labor and material, until the walls had been fully constructed and were ready for the roof. The structure was of concrete, and inseparable from the real estate. Its agreed value at that stage was $1,142.42. It was at this stage that the council of defendant repudiated the contract and notified plaintiff to desist from its performance. At the same time, it claimed the right to use the north wall as one of the walls of its pumping station, and it never relinquished such claim. Having due regard to the nature of the irregularity relied on as a ground of repudiation of the contract, we think that the subsequent conduct of the parties, pursuant to the contract, shows a ratification and an acceptance of benefits thereunder. To hold otherwise would be, not only to permit a gross fraud upon plaintiff, but also to make the defendant the beneficiary of it. The following excerpts from our previous cases are quite ap-

plicable to the facts appearing in this record: In *Marion Water Co. v. City of Marion,* 121 Iowa 306, we said:

"Reduced to a last analysis, we think the situation presents simply this question: Can the defendant city be held liable for benefits received, notwithstanding the fact that, in entering into the contract, the power possessed by it was defectively exercised? And it is our judgment that both reason and authority require an affirmative answer to such question. To begin with, the contract proposed by Starr was signed by him in good faith, and no other act on his part was required to make a binding contract. As far as the city was concerned, there was no purpose lying behind the defect in the execution of such contract, but such defect was occasioned solely by inattention on the part of the city council to the form of procedure prescribed by law. So, too, the waterworks company had no part in the enactment of the ordinance in question. Here, again, the defect was the result of careless inattention on the part of the city council. In this connection, we may concede that, in the case of an executory contract, a municipality may be heard to deny the validity thereof, upon pointing out the fact that, in connection therewith, the prescribed forms of law were not observed; and this would be true without reference to any question of intention or good faith, and notwithstanding the party with whom the contract was sought to be made had no actual knowledge of the existence of the defect. Manifestly, however, the principle involved in such cases has no application to a case where the contract has been fully executed according to its terms by such other party. * * * Now, in view of all this, we agree with counsel for appellant that the city cannot avail itself of an irregularity occurring in connection with the execution or adoption of the contract agreement to defeat its liability for the water actually furnished, received, and used at the contract rate. The irregularity

asserted did not involve the want of power. Had such been the case, the other contracting party might well be held to have acted in the premises at his peril. But it cannot be true, in reason or authority, that he may be despoiled of the fruits of the contract after the same has been fully performed on his part, simply because the city council is now able to point out that the draftsman employed by it had unintentionally and carelesssly omitted to make reference in the title of the ordinance adopted by it to certain of the provisions contained therein. Every principle upon which the law of estoppel is based may be invoked to override a defense thus sought to be interposed. The situation may fairly be likened to that of a principal who has accepted and retains all the benefits of a contract, but who seeks to avoid liability on his own part by asserting that the agent who acted for him in making such contract had failed to conform to his letter of authority in respect to form, conditions, etc. The principal might repudiate, of course; but to allow him to repudiate and at the same time retain, would be to give sanction to an act of injustice, and put a premium upon fraud. Our conclusion finds ample support in the following, among other, authorities."

In *Miller v. City of Des Moines,* 143 Iowa 409, we said:

"In any event, the work has been done; it has been accepted by the city; it is of a character which cannot be returned to the contractors, and thus place them *in statu quo;* it is work which, if not done by this contractor, would have to be done by some other person; the prices charged are not shown to be unreasonable; the invalidity of the contract is not chargeable to any wrong or omission on the part of the contractor, but solely to the act of the city, through its council. To say that the party doing such work must receive no remuneration therefor, and must return the compensation already received, is to impose all the

penalty upon an innocent party for the profit of the only party chargeable with the wrong. We are not disposed to so order. * * * An illustrative case is found in *Pickett v. School Dist.*, 25 Wis. 551 (3 Am. Rep. 105), involving a contract improperly made by the governing board with one of its members for the building of a schoolhouse. Before the building was entirely completed, litigation arose. and the district sought to have the contract declared void. The court there approves the doctrine that, in cases where the thing contracted for is itself against public policy, no right of recovery exists, either upon the contract or upon *quantum meruit;* but where the subject-matter of the contract is itself lawful and beneficial, and the objection goes only to the manner or method in which it has been awarded or made, it is inequitable to allow the party entitled to avoid it to receive and retain the benefits, without any compensation at all."

The defendant relies upon the case of *Citizens' Nat. Bank v. City of Spencer,* 126 Iowa 101, and kindred cases. This case dealt with a contract for improvements, the cost of which was to be assessed against abutting property. The contract involved was not one made by the city for its own corporate benefit. The rule of strictness applying in this class of cases, where the power of assessment against abutting property is exercised even against the will of the property owner, is not necessarily applicable to a case where the municipality enters into a contract for its own corporate benefit, and obligates itself to pay therefor. We reach the conclusion, therefore, that, upon the facts stated, as they were at the time of the repudiation of the contract by the defendant town, the plaintiff was entitled to claim a *quantum meruit* for the work done. Whether such *quantum meruit* should be deemed the measure of damages for breach of contract, or as due under an implied promise to pay, is not material, upon this record.

III. The defendant prayed an estoppel against the plaintiff. The facts pleaded, in substance, are that the plaintiff attempted to salvage the wreck, and sold the work done to the best advantage he could. All this appears to have been done under a mutual arrangement with the city council, whereby a public sale was held, and whereby the council published its readiness to convey to the purchaser the land upon which the structure stood, reserving to itself, however, the right of use of the north wall as a part of its pumping station. It was the right of the plaintiff in his own behalf, and his duty in behalf of the defendant, to minimize his damages. He did do so in this case in good faith, and in co-operation with the city council. He has at all times tendered credits upon his claim for the full amount received from said sales. The credits thereby tendered do full justice. We think no estoppel is shown. It was stipulated upon the trial that the value of the structure, so far as made, was $1,142.42. The plaintiff should have had judgment for this amount, less the credits due for amounts realized on the sale of material. The judgment dismissing the petition is, therefore, —*Reversed.*

5. ESTOPPEL: equitable estoppel: evidence.

LADD, C. J., WEAVER, GAYNOR, PRESTON, SALINGER, and STEVENS, JJ., concur.