2010 Ark. App. 755

**Robert CLEARY, Appellant**

v.

**SLEDGE PROPERTIES, INC., Appellee.**

**No. CA 09–1304.**

Court of Appeals of Arkansas.

Nov. 10, 2010.

---

Charles Sidney Gibson, Gibson Law Office, Dermott, for appellant.

Robert Bruce Anderson, Jr., Haley, Claycomb, Roper & Anderson, PLLC, Warren, for appellee.

M. MICHAEL KINARD, Judge.

Appellant Robert Cleary appeals from a grant of summary judgment in favor of appellee Sledge Properties, Inc. (Sledge), on Cleary's complaint for declaratory judgment that he is the owner of certain real property by adverse possession. Cleary raises five points for reversal. Sledge cross-appeals from the circuit court's order finding that Sledge was not entitled to any damages on its counterclaim for unlawful detainer.[1] We affirm on direct appeal and reverse and remand on cross-appeal.

In November 1989, Cleary entered into a written contract with Gardner Investments, Inc., for the purchase of certain real property located in Drew County. According to the contract, Cleary was to pay the $21,000 balance of the purchase price in monthly installments of $277.53, over a ten-year period. The contract, which was not recorded, also provided that Cleary would pay all taxes and maintain insurance on the property. The contract also provided that Gardner Investments would deliver a deed to Cleary when the purchase price and all other sums due under the contract had been paid. In December 1993, Cleary reduced the monthly payments to $175 per month. He later asserted that this was the result of renegotiating the contract. Cleary ceased making payments altogether in April 1998. The property was subsequently conveyed to Sledge in March 2007.[2] Cleary has remained in possession of the property since 1989.

On May 21, 2007, Cleary filed a complaint alleging that he owned the property by adverse possession. Sledge denied the material allegations of the complaint and asserted that Cleary had failed to pay the full purchase price for the property. Sledge also filed a counterclaim in unlawful detainer, seeking possession of the property, judgment for $6,300, the amount of the unpaid rent, and its attorney's fees and costs.

Sledge subsequently filed a motion for summary judgment on Cleary's complaint, asserting that Cleary could not prevail on his claim because he was in default on his payments under the contract. The motion further alleged that Gardner Investments, not Cleary, had paid the property taxes on the property, thereby negating one of the elements of a claim for adverse possession. The motion also asserted that Cleary lacked color of title, another element of adverse possession. In response, Cleary asserted that he and Gardner Investments had renegotiated the agreement and adjusted the sales price down. He also submitted an affidavit from his daughter Lisa Cleary averring that Gardner Investments had paid the real-estate taxes because the assessor would not accept payments from Cleary without the property being in Cleary's name.

After a hearing, the circuit court granted Sledge's motion for summary judgment by order entered on July 25, 2008. The court found that, under Arkansas Code

---

1. We dismissed an earlier appeal for lack of a final order in that Sledge's counterclaim had not been resolved. *Cleary v. Sledge Props.*, 2009 Ark. App. 353, 2009 WL 1154926.

2. Gardner Investments conveyed the property to Community Radio Network, Inc., an entity controlled by P.Q. Gardner, the president of both companies, in 2004. Community Radio Network conveyed the property to Sledge.

Annotated section 18–11–106, as amended by Act 776 of 1995, Cleary was required to prove that he had paid the taxes on the real property and he submitted no proof of such payment. The court found that section 18–11–106 also required Cleary to hold under color of title and that his contract for sale did not constitute color of title. Finally, the court relied on the presumption that, where the initial possession of property begins as permissive, it is presumed to continue as permissive until notice of the hostility of the possessor's holding is given to the owner.

After this court dismissed Cleary's appeal from the grant of summary judgment, *Cleary, supra,* the case proceeded to a bench trial on Sledge's counterclaim. At the conclusion of the trial, the court made findings of fact from the bench. The court found that Cleary had breached the contract by not making the full monthly payments and by not paying the taxes. The court awarded possession of the property to Sledge. The court further found that $175 per month was the fair rental value of the property but declined to award Sledge any damages. Each party was to bear its own attorney's fees. This appeal and cross-appeal followed.

■ For his first point, Cleary argues that the circuit court erred in denying his request that his daughter, Lisa Cleary, be allowed to sit at counsel table and assist him in presentation of his case because he was illiterate and was suffering from Alzheimer's disease. As a general rule, a trial court may control the seating arrangement in the courtroom, and unless a party suffers some prejudice from the arrangement, seating is not a ground for reversal. *Mask v. State,* 314 Ark. 25, 869 S.W.2d 1 (1993); *Webster v. State,* 284 Ark. 206, 680 S.W.2d 906 (1984).

■ Cleary relies upon Arkansas Rule of Evidence 615 to support his argument. The rule deals with exclusion of witnesses

from the courtroom upon motion or upon the circuit court's own initiative. It makes an exception that precludes exclusion "of a person whose presence is shown by a party to be essential to the presentation of his cause." Ark. R. Evid. 615(3). The Rule 615(3) exception applies "to such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation." *Arkansas Power & Light Co. v. Melkovitz,* 11 Ark.App. 90, 102, 668 S.W.2d 37, 44 (1984). In order to establish that the presence of a witness is essential to the presentation of a party's cause, it must be shown that the witness has such specialized expertise or intimate knowledge of the facts of the case that the party's attorney could not effectively function without the presence and aid of the witnesses. *Id.* However, there is no such proof in the record. As the issue was raised at the start of trial, the dispute was over whether Cleary was incompetent because of Alzheimer's disease, not that Lisa Cleary had handled the transaction and, therefore, had such intimate knowledge of the facts of the case that her presence was necessary. Lisa Cleary's proffered testimony addressed Cleary's mental state and whether he was under a doctor's care.

Rulings dealing with the exemptions from this rule are within a circuit court's discretion. *Parker v. Holder,* 315 Ark. 307, 867 S.W.2d 436 (1993). Based on this record, we cannot say that the circuit court abused its discretion in not allowing Lisa Cleary to remain at counsel table and assist in the presentation of the case.

Cleary's remaining four points deal with the circuit court's grant of summary judgment on Cleary's adverse-possession claim. Those points are that the circuit court erred by (1) ruling as a matter of law that Cleary's post-breach possession of the

property was not hostile; (2) ruling that the 1995 amendment to Arkansas Code Annotated section 18–11–106 applied to this case and that Cleary was not entitled to credit for the payment of taxes by Gardner Investments; (3) ruling that the contract for purchase did not constitute color of title; and (4) finding that the parties had not modified their contract. We find no error in the granting of summary judgment to Sledge on the adverse-possession claim.

■ In order to establish title by adverse possession, Cleary had the burden of proving that he had been in possession of the property continuously for more than seven years and that the possession was visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Robertson v. Lees,* 87 Ark. App. 172, 189 S.W.3d 463 (2004). The Arkansas General Assembly enacted certain statutory requirements for proof of adverse possession in Act 776 of 1995, now codified at Arkansas Code Annotated section 18–11–106.[3] In order for a claimant to establish adverse possession under this law, the claimant must prove color of title and payment of ad valorem taxes, in addition to the common-law elements of adverse possession. *Barnett v. Gomance,* 2010 Ark. App. 109, 377 S.W.3d 317. The circuit court held that Cleary failed to prove his adverse possession claim in part because he failed to prove that his possession after he reduced his payments from the original amount was hostile or that he paid the property taxes on the property.

In *Schrader v. Schrader,* 81 Ark.App. 343, 101 S.W.3d 873 (2003), we held that the amendment to section 18–11–106 did not apply to landowners whose claims of adverse possession had vested prior to the enactment of the amendment. Consequently, the question here is whether Cleary's claim ripened prior to the amendment of the statute. We hold that it did not because there was no hostile possession until after the amendment of section 18–11–106 became effective.

■ Adverse possession occurs where possession of specific property is inconsistent with the true owner's rights and is accompanied by certain acts, including hostility. *See Arkansas Commemorative Comm'n v. City of Little Rock,* 227 Ark. 1085, 303 S.W.2d 569 (1957); 10 *Thompson on Real Property* § 87.01 at 75–76 (David Thomas ed., 2d ed.1998 & Supp.2009). Running alongside that precept, however, is the tenet that a purchaser in possession of property may not establish adverse possession against his seller under an executory contract. *Tillar v. Clayton,* 76 Ark. 405, 88 S.W. 972 (1905).[4] The rule is supported by numerous policy justifications. Mainly, the purchaser under an executory contract of sale cannot establish the "hostility" element of adverse possession because he enters into possession with the permission of the seller. *See Cleveland, supra;* Annotation, *Adverse Possession as against Vendor by one who Enters Under Executory Contract,* 1 A.L.R. 1329 (1919). In addition, the rule is born of concern that a seller would otherwise have no recourse against a purchaser who re-

---

**3.** The effective date of Act 776 was July 28, 1995. *See* Op. Ark. Att'y Gen. No. 119 (1995).

**4.** *See also Coop v. Johnson,* 190 Ark. 550, 80 S.W.2d 70 (1935); *Little Rock & F. S. R. Co. v. Rankin,* 107 Ark. 487, 156 S.W. 431 (1913); *Cleveland v. Aldridge,* 94 Ark. 51, 125 S.W. 1016 (1910); *Dickson v. Sentell,* 83 Ark. 385,

104 S.W. 148 (1907); *Perry v. Arkadelphia Lumber Co.,* 83 Ark. 374, 103 S.W. 724 (1907); 4 Herbert T. Tiffany, *The Law of Real Property* § 1183 (3d ed.1975 & Supp.2004) (possession by purchaser of land under an executory contract of sale prevents adverse possession so long as the purchase price has not been paid).

neges on payments after entering into and remaining in possession for the installment period. *See Owens v. Bartruff,* 297 Or. 610, 687 P.2d 1072, 1074 (1984). Along those lines, the purchaser is presumed subservient to the rights of his seller and thereby equitably estopped from claiming that his possession is adverse. *See Tillar,* 76 Ark. at 409, 88 S.W. at 973.

■■ In the present case, Cleary entered into the contract, and possession of the property, in November 1989. He unilaterally reduced the amount of his payments to $175 per month in 1993. The idea that Cleary's unilateral reduction of the payment amount in 1993 was a repudiation of the contract so as to start the running of the statute of limitations is inconsistent with his argument that he renegotiated his contract with Gardner Investments in order to |₈account for the building of a radio tower on the property. In the first place, a unilateral change in the terms of a contract is not a renegotiation of that contract. Moreover, even if the reduction of the payment amount resulted from a renegotiation of the contract, it cannot be a repudiation of that contract as renegotiated because Cleary's possession was still under the contract and a recognition of the title held by Gardner Investments. Repudiation of the contract did not occur until 1998, when Cleary ceased making his payments altogether. *Tillar, supra.* Cleary argues that he finished making the payments in 1998 and he bore the burden of proving the payment of the purchase price. *Id.* It is only upon the payment of the entire purchase price that Cleary's possession would have become adverse to Gardner Investments' title. *Cleveland, supra; Dickson v. Sentell,* 83

Ark. 385, 104 S.W. 148 (1907). The amendment to section 18–11–106 took effect in July 1995 and Cleary's claim of adverse possession had not yet begun to run, let alone vest. Therefore, the circuit court did not err in ruling that Cleary was required to prove that he had paid the taxes on the property. The court specifically found that Cleary had failed to submit any proof of payment of taxes on the property. Because Cleary was required to prove that he paid the taxes on the property, his claim for adverse possession must fail.[5]

■ |₉Because we have concluded that Cleary's claim must fail because he did not show proof of payment of taxes, we need not address his fourth point concerning color of title or his fifth point concerning renegotiation of the contract for sale. Where a plaintiff cannot establish an essential element of his claim, summary judgment is appropriate. *Eady v. Lansford,* 351 Ark. 249, 92 S.W.3d 57 (2002); *Short v. Little Rock Dodge, Inc.,* 297 Ark. 104, 759 S.W.2d 553 (1988).

■ As its sole point on cross-appeal, Sledge argues that the circuit court erred in denying its claim for damages in the form of back rent from Cleary. The circuit court did not explain why Sledge's claim was denied. Sledge's argument is that the circuit court had no discretion to refuse to award it damages.

Sledge's original counterclaim was for the unlawful detainer of its property. It asked not only for possession, but also for unpaid rent in the amount of $6,300. Arkansas Code Annotated section 18–60–309 governs unlawful detainer actions and states in pertinent part:

the appellate courts will not address arguments unless they are sufficiently developed and include citation to authority. *Gatzke v. Weiss,* 375 Ark. 207, 289 S.W.3d 455 (2008).

---

5. As part of his third point, Cleary argues that the circuit court should have given him credit for the payment of taxes by Gardner Investments. However, he cites no authority for this proposition. It has long been held that

(a) If upon the trial of any action brought under this subchapter the finding or verdict is for the plaintiff, the court or jury trying it shall assess the amount to be recovered by the plaintiff for the rent due and agreed upon at the time of the commencement of the action and up to the time of rendering judgment or, in the absence of an agreement, the fair rental value.

(b) In addition thereto in all cases the court shall assess the following as liquidated damages:

(1) Where the property sought to be recovered is used for residential purposes only, the plaintiff shall receive an amount equal to the rental value for each month, or portion thereof, that the defendant has forcibly entered and detained or unlawfully detained the property; and

(2) Where the property sought to be recovered is used for commercial or mixed residential and commercial purposes, the plaintiff shall receive liquidated damages at the rate of three (3) times the rental value per month for the time that the defendant has unlawfully detained the property.

Ark.Code Ann. § 18–60–309(a), (b) (Supp. 2009). We have held that the use of the word "shall" in section 18–60–309(b) mandates an award of liquidated damages to the owner in an action for unlawful detainer. *Mendez v. Aguilar*, 2010 Ark. App. 268, 2010 WL 1233841; *Waterall v. Waterall*, 85 Ark.App. 363, 155 S.W.3d 30 (2004). In *Waterall*, the trial court found that the defendant detained the plaintiff's property but the trial court awarded damages only in the amount of the fair market rental value. The landowner filed a cross-appeal and this court reversed and remanded the case to the trial court so the court could award the mandated liquidated damages as set forth in the statute.

If the use of the word "shall" was deemed to mandate an award of liquidated damages under section 18–60–309(b), it should logically be deemed to mandate an award of damages for the fair market rental of the property under subsection (a). The circuit court found that the fair-rental value of the property to be $175 per month. We reverse and remand for entry of an order awarding Sledge judgment for the fair rental value of the property.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

PITTMAN and GLADWIN, JJ., agree.