2011 Ark. App. 234

**Melvin EMERSON and Jeanette Emerson, husband and wife, Appellants**

v.

**Stephen LINKINOGGER and Toni Linkinogger, husband and wife, and Harold Christian and Luann Christian, husband and wife, Appellees.**

No. CA 10–1002.

Court of Appeals of Arkansas.

March 30, 2011.

Melvin E. Morgan, Clinton, for appellants.

Kent Tester, Clinton, for appellees.

ROBERT J. GLADWIN, Judge.

Appellants Melvin and Jeanette Emerson appeal the May 12, 2010 decree filed by the Van Buren County Circuit Court quieting title to the disputed land in favor of appellees Stephen and Toni Linkinogger and Harold and Luann Christian. Appellants argue that the circuit court erred in its application of the law and in finding that they failed to prove that their possession of the disputed property was adverse and hostile. We affirm.

Appellants own property located in Section 9, Township 10, Range 15, in Van Buren County, Arkansas, adjacent to property owned by appellees. Appellants obtained title to the property by deed executed by Melvin Emerson's mother's trust and filed on July 29, 2003. The property was previously purchased in 1950 by his stepfather, Mr. Dillard Hall, who bought the property from his in-laws, who had homesteaded the land in 1892. Melvin Emerson has been familiar with the prop-

erty since his mother married Mr. Hall, approximately twenty-five years ago.

The Linkinoggers obtained their property by warranty deed filed on March 19, 2008. The Christians obtained their property by warranty deeds filed on November 16, 2004, and March 3, 2005. The alleged boundary line between the properties was an old fence that had been in existence since the 1930s. Appellees commissioned a survey, dated March 18, 2008, which designated a boundary that went well into the pasture used by appellants. When appellees attempted to construct a fence on the survey line, they were stopped by appellant Melvin Emerson, who claimed that they had no right to construct the fence. On March 17, 2009, appellees filed a petition to quiet title and for an injunction seeking to establish a boundary line between the properties. On March 25, 2009, appellants filed an answer to the petition and a counterclaim seeking to quiet title up to the fence, based upon over seventy-five years of uninterrupted use.

A trial was held on April 9, 2010. At trial, appellant Melvin Emerson testified that he had run cattle on his land and the disputed pasture land for approximately twenty-five years. He explained that his stepfather had used the property to graze goats and other animals from the time he purchased his land in 1950. Additionally, appellant Melvin Emerson testified that he employed Con Agra to till the soil in the pasture and spread "chicken sludge" on the tilled soil for fertilizer. He explained that he and his family have plowed the property, sowed grass seed, cut hay off of it, grazed cattle, and hunted on the property the entire time they have owned it and that the use of the property extended up to the fence line. Mr. Emerson did acknowledge that a thicket had grown up around the fence and that, since the filing of the lawsuit, he had made improvements to the fence. It is undisputed that the pictures of the fence that were introduced into evidence were taken after repairs to the fence were made.

Appellants introduced the testimony of Vesta O'Neal, who also owns property adjacent to appellants along the old fence line. Mrs. O'Neal testified that she moved to this property in 1936. She testified that she considered the fence to be the property line and that the fence had been in the same location since the late 1930s. She explained that appellant Melvin Emerson's stepfather and predecessor in interest, Mr. Hall, ran cattle on this property for as long as she could remember.

Mr. Christian testified that, not only was the fence line overgrown with brush and not visible, but also that the fence was ineffective in that it allowed appellants' cattle to escape onto his property. Mr. Christian explained that he had tried to fix the fence line by picking the fence up and nailing it to the post as a courtesy to Mr. Emerson. The cattle had previously been kept inside Mr. Emerson's property because of the vines and the growth around the fence line, but once Mr. Christian began clearing out the overgrown woods, which included the fence line, and building a field, the cows began to cross the dilapidated fence.

Appellees argued that the requirements for adverse possession had not been established; therefore, the property line should be the survey line. The circuit court agreed with appellees, ruling that the property line was established by the survey and that appellants had not proven that their occupation of the disputed property was "adverse and hostile." A final decree was filed on May 12, 2010, and a notice of appeal was filed on May 18, 2010.

■ We traditionally review quiet-title and boundary-line actions de novo. *Rio Vista, Inc. v. Miles,* 2010 Ark. App. 190, 374 S.W.3d 698. We will not, however, reverse findings of fact unless they are clearly erroneous. *Id.* Further, whether possession is adverse to the true owner is a question of fact. *Id.* We will not reverse a trial court's finding regarding adverse possession unless it is clearly erroneous. *Id.* A finding is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed." *R.K. Enters. LLC v. Pro–Comp Mgmt. Inc.,* 372 Ark. 199, 204–05, 272 S.W.3d 85, 89 (2008). In reviewing a trial court's findings of fact, the appellate courts give due deference to the trial court's superior position to determine witness credibility and the weight to be accorded their testimony. *Thurlkill v. Wood,* 2010 Ark. App. 319, 374 S.W.3d 790.

■ While the above standard applies to findings of fact, appellate courts will not defer to the circuit court on a question of law. *Jones v. Abraham,* 67 Ark.App. 304, 310, 999 S.W.2d 698, 702 (1999). The circuit court's decision will be reversed if it "erroneously applied the law and the appellant suffered prejudice as a result." *Id.* A question of law is presented where the facts are "undisputed or unequivocal." *Sterne, Agee & Leach, Inc. v. Way,* 101 Ark.App. 23, 31, 270 S.W.3d 369, 376 (2007). Where the facts are not disputed in an adverse-possession case, the question presented on review is purely one of law. *Moore v. Dunsworth,* 2010 Ark. App. 446, 2010 WL 2103533.

|₅Appellants initially argue that the discretion of the circuit court was limited in this case because there was no dispute regarding the facts forming the basis of appellants' adverse-possession claim. They submit that the Christians do not possess any information regarding the use of the property or the fence prior to their purchase of the property in 2004, and the Linkinoggers possess very limited knowledge regarding the property before it was purchased in 2008. Appellants point out that appellees did not present any other evidence at trial regarding appellants' use of the property, or the history of the fence, for any time prior to their ownership. Thus, appellants claim that there was no issue of fact decided by the circuit court in finding that they did not prove their claim of adverse possession.

Appellants claim that the only dispute in this case is the application of well-established law to the uncontradicted facts. The circuit court found that the doctrine of adverse possession did not apply because "[t]he element of adverse and hostile cannot be met as to original parties or their subsequent owners." They urge that this is a misapplication of the uncontradicted facts to the applicable law, and should be reversed on appeal.

We disagree. The circuit court reviewed the testimony of the parties and Mrs. O'Neal and examined the photographs of the disputed property line, most of which were taken within a year before the trial or at the time of the filing of the lawsuit and after much clearing had been done. While there may not have been a factual dispute as to the location of the fence line, there was a factual dispute as to the actual, legal boundary line between the properties. We decline to hold that the circuit court misapplied the law in its factual determination regarding appellants' adverse-possession claim.

■ |₆Appellants next contend that the circuit court misapplied the uncontested facts in granting appellees' request to quiet title and for injunctive relief. We find no clear error in the circuit court's conclusion that appellants did not establish

adverse possession of the disputed land. In order to establish title by adverse possession, the person making that claim has the burden of proving that he has been in possession of the property continuously for more than seven years and that the possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Cleary v. Sledge Props., Inc.*, 2010 Ark. App. 755, 379 S.W.3d 680. The Arkansas General Assembly enacted certain statutory requirements for proof of adverse possession in Act 776 of 1995, now codified at Arkansas Code Annotated section 18–11–106. *Id.* In order for a claimant to establish adverse possession under this law, the claimant must prove color of title and payment of ad valorem taxes, in addition to the common-law elements of adverse possession. *Id.* Adverse possession occurs where possession of specific property is inconsistent with the true owner's rights and is accompanied by certain acts, including hostility. *Id.*

Appellants reiterate that the property in question has been used for farmland since the late 1930s. Specifically, it was used to graze and pasture cattle. In order to establish a possession that is actual, open, notorious, continuous, hostile, and exclusive, appellants acknowledge that they must demonstrate acts of ownership that are consistent with such dominion over farmland used for grazing cattle. The acts of dominion over the property must be those that are typically and usually demonstrated by one who owns pasture land or farmland. Appellants argue that the evidence presented established acts of ownership that proved that their possession was "actual, open, notorious, continuous, hostile, and exclusive," given the nature of this property, and that the circuit court erred in ruling that they did not prove their case of adverse possession.

Appellants cite numerous cases in support of their position, including *Boyd v. Roberts*, 98 Ark.App. 385, 255 S.W.3d 895 (2007). In that case, this court addressed the contested ownership of property that was between an old fence, and the "true property line" determined by a recent survey. The appellants commissioned a survey that showed that the property line ran from seventy-five to ninety-six feet on the appellees' side of an existing barbed-wire fence. The appellants then notified the appellees that they were claiming ownership of this property, and the appellees filed suit to quiet title to the lands based on a claim of adverse possession. *Id.* The circuit court entered a decree quieting title in the name of the appellees. *Id.*

On appeal, this court stated that the question in regard to the fence was whether the enclosure is sufficient to "fly the flag" over the land and put the true owner on notice that his land is held under an adverse claim of ownership. *Boyd v. Roberts, supra.* In that particular case, the court concluded that the total activities of the appellees constituted sufficient evidence of possession and ultimately affirmed the circuit court's ruling that the appellees had obtained the disputed property through adverse possession. *Id.*

Appellants claim that the facts in the present case are even stronger and more persuasive in favor of a finding of adverse possession than those in the *Boyd* case. They submit that the fence in this case was not "degraded" to the point that it was no longer obvious to all parties. The fence was old but was still used to contain cattle at all times relevant to this case. Furthermore, appellants spent considerable time and effort to improve and maintain the fence. They claim that those actions were sufficient to give notice to appellees of adverse ownership.

In addition to the fence, appellants reiterate that they exercised sufficient dominion and control over the property in question. As in *Boyd*, Mr. Emerson testified that he plowed the property, sowed grass seed, cut hay off of it, hunted on it, and spread fertilizer on the land. Given this diverse and consistent use of the property, appellants assert that the acts should have been sufficient to put appellees on notice of their claim of ownership of the property, just as in *Boyd*.

Under the principal concept of adverse possession, it is critical that a particular possession of property be hostile to the true owner. The doctrine of title by adverse possession rests upon the question of the owner's acquiescence to the hostile acts and claims of the person in possession. Hence, possession, to be adverse, must be in hostility to, and not in subservience to, the rights of the true owner. Appellants note that the determination of whether the character of a possession is hostile "is determined by the occupant's own views, actions and intentions and not those of his adversary." *Potlatch Corp. v. Hannegan*, 266 Ark. 847, 849, 586 S.W.2d 256, 257 (1979). However, "it is not necessary that the possessor have a conscious feeling of ill will or enmity toward his neighbor" in order for the possession to be considered adverse or hostile. *Vaughn v. Chandler*, 237 Ark. 214, 216, 372 S.W.2d 213, 214 (1963).

At trial, appellees argued that the possession was not adverse and hostile because no one knew or cared where the true line was prior to the survey. Appellees reiterate that the question before the circuit court was whether an old fence line that was dilapidated to the point of being on the ground at various points and being covered in vine, brier, and bramble was sufficient to put appellees and their successors in interest on notice of adverse possession. They point out that in *Boyd*, *supra*, this court did not overturn the trial court's decision for misapplication of law but actually affirmed its findings of fact. The court noted in *Boyd* that a fact determination exists for the trial court to determine whether a fence is "visible enough" to impute knowledge to the parties of its existence and to establish adverse possession. *Id.*

The various photographs introduced by the parties depict the fence line at the time of or after the filing of the lawsuit at which point significant clearing and repairs of the fence had occurred. Even in this condition, the photographs depict a fence line intertwined and covered with vines, briers, bushes, and all kinds of bramble to the point that the fence was not even visible. Thus, the photographs of the fence line in its most optimal condition, having undergone subsequent repairs and clearing, still support the circuit court's findings of fact. Furthermore, the evidence shows that the fence was located in a thick, overgrown tree line that was only partially visible from appellants' side and invisible from appellees' side of thicket.

Appellees urge that the circuit court reasonably determined that the state of the fence line located at the edge of the woods and covered with vine, brier, and bramble was not sufficient to "fly the flag" over the land and put the true owner on notice that this land was held under adverse possession. A key element in proving adverse possession is "an intent to hold against the true owner." *See Ford v. Howard*, 2009 Ark. App. 196, 300 S.W.3d 505. If the original use and possession of the land is permissive, it cannot become adverse for purposes of adverse possession until notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a pre-

sumption of notice equivalent to actual notice. The evidence of adverse holding when the original entry is by permission must be "very clear." *Id.*

Mrs. O'Neal's testimony regarding the origins of the fence and the use of the land could be found to support both sides' arguments. While she confirmed the length of time the fence had been standing and how it was utilized, she also indicated that there was a very close relationship with Mr. Hall, which supports the argument of the permissive placement of the fence and use of the property. We acknowledge that even though an occupancy is commenced with permission, it can become adverse and hostile where "notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a presumption of notice equivalent to actual notice." *Tolson v. Dunn,* 48 Ark.App. 219, 893 S.W.2d 354 (1995). Additionally, this court has held that the presumption of permissive use erodes over time. In *Hicks v. Flanagan,* 30 Ark.App. 53, 782 S.W.2d 587 (1990), this court explained:

> It is a rule of general application that where a grantor remains in possession there is a presumption that he does so in subordination to the grant and not in hostility to it. There is, however, an exception to the rule where the occupancy continues unexplained for an unreasonable length of time. Under those circumstances the presumption is gradually overcome by the lapse of time.

*Id.* at 57–58, 782 S.W.2d at 590. Appellants urge that any presumption of permissiveness is rebutted by this extensive and continuous use over two generations.

We disagree and hold that the circuit court properly assessed the credibility of the witnesses, specifically considered the testimony of Mrs. O'Neal, reviewed the photographs of the fence line, and determined that the elements of adverse possession had not been proven by a preponderance of the evidence. Because we hold that such finding was not clearly erroneous, we affirm.

Affirmed.

WYNNE and GLOVER, JJ., agree.