


# ARKANSAS COURT OF APPEALS

DIVISION IV
No.  CV–13–766

| | |
|---|---|
| DANNIE F. LAFFERTY AND LINDA S. LAFFERTY, HUSBAND AND WIFE<br>APPELLANTS<br><br>V.<br><br><br>CURREN EVERETT AND VELNA EVERETT, HIS WIFE; CONNIE EVERETT AND DEBBIE EVERETT, HIS WIFE; DENNIS EVERETT AND PAM EVERETT, HIS WIFE, D/B/A EVERETT CONSTRUCTION COMPANY<br>APPELLEES | **Opinion Delivered** May 28, 2014<br><br>APPEAL FROM THE FULTON COUNTY CIRCUIT COURT [NO. CV-2006-106-2]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Dannie F. Lafferty and Linda S. Lafferty, husband and wife, appeal the circuit court's order denying their claim of ownership by adverse possession to a thirty-acre tract of land. The Laffertys, who hold record title to 140 acres of land contiguous to thirty acres, sought to establish that a fence running through the woods on the disputed tract was their property's boundary line.  On December 11, 2006, after discovering that the fence had been removed—its barbed wire cut, rolled up, and lying on the ground—they filed a lawsuit to quiet title in their favor and against appellees: Curren Everett and Velna Everett, his wife; Connie Everett and Debbie Everett, his wife; and Dennis Everett and Pam Everett, his wife, d/b/a Everett Construction Company (collectively, the Everetts).  The Laffertys contend that

the trial court erred in finding that certain acts by them and by their predecessors in interest were not sufficient to establish possession adverse to the Everetts.[1] We affirm.

Adverse possession is governed by both common and statutory law. *Sutton v. Gardner*, 2011 Ark. App. 737, 387 S.W.3d 185. To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that the possession has been visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. *Id.* Arkansas Code Annotated section 18-11-106 (Supp. 2013), which codified Act 776 of 1995, added a statutory requirement for proof of adverse possession that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years. The claimant need not comply with the statutory change, however, if the right to the disputed property vested before 1995. *Sutton, supra.*

It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Anderson v. Holliday*, 65 Ark. App. 165, 986 S.W.2d 116 (1999). A party seeking to acquire title to woodland under claim of adverse possession must

---

[1]The Laffertys initially filed their claim against Curren Everett and Velna Everett, husband and wife, individually and d/b/a Everett Construction Company, who in turn filed a third-party claim against their predecessor in interest, Delta Willis. By agreement of the parties and order of the court, the present appellees (Everetts) were substituted as defendants on the Laffertys' claim.

The circuit court awarded the Everetts $5500 and costs on their third-party claim against Ms. Willis—who did not appear at trial—for breach of warranty to defend title against all claims. She is not a party to the present appeal.

SLIP OPINION

show "actual use of the land of such unequivocal character as to reasonably indicate to the owner visiting the premises during the statutory period that such use and occupation indicate an appropriation of ownership in another." *Dierks Lumber & Coal Co. v. Carroll*, 223 Ark. 424, 429, 266 S.W.2d 294, 297 (1954). Whether possession is adverse to the true owner is a question of fact. *Sutton*, *supra*. We review quiet-title and boundary-line actions de novo, but we will not reverse findings of fact unless they are clearly erroneous. *Emerson v. Linkinogger*, 2011 Ark. App. 234, 382 S.W.3d 806.

In *Emerson*, appellants sought to quiet title up to a fence based on seventy-five years of uninterrupted use of the land that included tilling soil and spreading fertilizer, sowing grass seed and cutting hay, hunting, and twenty-five years of running cattle. 2011 Ark. App. 234, at 2, 382 S.W.3d at 808. The fence had become dilapidated to the point of being on the ground at various points; was located in a thick, overgrown tree line and was covered in vine, brier, and bramble; and even with repairs and clearing that were done after litigation had begun, was invisible from appellees' side of the thicket. *Id*. at 3, 382 S.W.3d at 808. Appellees asserted that the circuit court reasonably determined that the state of the overgrown fence line at the edge of the woods was not sufficient "to 'fly the flag' over the land and put the true owner on notice that this land was held under adverse possession." *Id*. at 10, 382 S.W.3d at 811. We found no clear error in the circuit court's determination that the elements of adverse possession had not been proved by a preponderance of the evidence. *Id*. at 11, 382 S.W.3d at 812.

In *Jones v. Dierks Forests, Inc.*, 238 Ark. 551, 383 S.W.2d 110 (1964), appellee held

record title to the acreage in controversy and had paid taxes on it for more than twenty years.

Appellant claimed that he acquired title by adverse possession; for more than seven years, he

had enclosed the lands by a fence along with other lands he owned and had grazed cattle on

the lands. *Id.* Our supreme court concluded that the lower court's decision against him was

not against the preponderance of the evidence:

> The record . . . shows conclusively that the said fence (during a great portion of the time) had such large gaps in it that it would not contain cattle. Such being the case, the chancellor was justified in finding appellant's possession was insufficient to "fly the flag" as required by our decisions in *Dowdle v. Wheeler*, 76 Ark. 529, 89 S.W. 1002 [1905], and *Dierks Lumber & Coal Co. v. Carroll*, 223 Ark. 424, 266 S.W.2d 294 [1954].

*Jones*, 238 Ark. at 554, 383 S.W.2d at 112.

The parties in the present case stipulated at the bench trial, held on October 30, 2012,

that the Laffertys took possession of certain lands they obtained by inheritance and from deed.

The Laffertys asserted that Mr. Lafferty's in-laws had claimed possession to the fence, which,

along with the nature of the possession, would establish a boundary line by adverse possession.

The Everetts did not dispute that the fence line had been in place for as many as forty years,

or that the Laffertys had bulldozed a fire lane and had cut timber and wood. The Everetts did

dispute that the fence constituted any boundary, that the fence was of such character and

nature to put one on notice, and that acts of the Laffertys were sufficient to meet legal

requirements for a claim of adverse possession.

The circuit court's order sets forth these largely uncontroverted facts: the Laffertys had

no color of title to the disputed tract and had not paid taxes on it; the Everetts had record title

to the disputed tract, on which they and their predecessor in interest, Delta Willis, had paid

4

taxes since at least 1968; the Laffertys' predecessors in title obtained title to the contiguous 140

acres in 1972; from the time of acquiring the 140 acres in the mid–1970s to the present, the

Laffertys and their predecessors in title had paid taxes on the 140 acres to which they had legal

title; and the Laffertys had lived on the land since at least 1990. Other uncontroverted facts,

as set forth in the order, related more specifically to the fence at issue:

> F.     In the mid–1970s, Plaintiffs' [the Laffertys'] predecessors in title . . . fenced in
> what they believed to be their 140 acres;
>
> G.     In addition to fencing in their 140 acres, Plaintiffs' predecessors in title also
> fenced in the disputed tract, which at the time was owned by Defendant Delta Willis;
>
> H.     From the time the fence was built in the mid–1970s, Plaintiffs' predecessors in
> title intermittently ran cattle on the entire farm, including the disputed tract;
>
> I.     Sometime in the mid to late 1990s, Plaintiffs contracted with the Arkansas
> Forestry Commission to establish a fire lane around the perimeter of their property,
> including the East claimed property line, which is the property line in question;
>
> J.     After acquiring title from the predecessors in title, Plaintiffs, from time to time,
> ran two or three horses on their entire farm, including the disputed tract;
>
> K.     The disputed tract is overwhelmingly in timber and has been for the entire
> period of time pertinent to this case;
>
> L.     At times, the fence along the disputed tract was down in places and would
> have been unable to contain livestock;
>
> M.     At times the fence along the disputed tract was maintained in good condition
> and would have, and did, contain livestock.

The circuit court found that, although there had been logging on the Laffertys' land

with selective cutting on the disputed tract, there was a failure of proof "that the logging on

the disputed tract was more than seven years prior to the filing of the lawsuit." Additionally,

the court found that other acts of possession by the Laffertys during the statutory period were

not sufficient to sustain the claim of adverse possession.

The Laffertys argue on appeal that they or their predecessors in interest used the disputed land openly, notoriously, and personally for more than seven years. They point to evidence of constructing the fire road, which they assert no reasonable person would do except on his own land and no true landowner would stand for. They note evidence that the fence was built in the 1970s, and was maintained and used by their predecessors and themselves for many years. They rely on the fact that their predecessors kept cattle on the disputed land for over seven years and that the Laffertys' children kept their horses on it. They also note testimony that they had cleared timber from the property.

Phillip Goodson testified that he built the fence from tree to tree for the Lafferty family in 1977—based on an even earlier fence; that the fence was sufficient to contain twenty to forty cattle and to outline what was believed to be the boundary; that the fence served both as a boundary line and a restraint to cattle; and that it was maintained. Dannie Lafferty testified that in 1997, he paid the Arkansas Forestry Commission to construct a fire road around the outside boundary of the fence with a bulldozer, and that his father-in-law had grazed twenty or more cattle part-time. He also testified that he once sold timber off the land; that his nephew cut timber off the property for him in 1999 or 2000, opening the land; that he (Dannie) then sowed grass in the fire lanes and pastured two horses until an ice storm damaged the fence in 2006 or 2007; that his wife and mother–in–law had added steel posts for holding the horses; that he periodically repaired the fence; and that ninety-seven percent of the thirty acres was in timber. Denny Walsh, Dannie Lafferty's nephew, testified that the fire

lane and the fence were obvious when he thinned timber in the winter of 1999 or the spring of 2000. Linda Lafferty, Dannie's wife, testified that their daughters' two horses were kept inside the fence from 1990 until it was torn down.

The Everetts presented testimony that they purchased the property from Delta Willis through a realtor in 2004. They acquired 100 acres, more or less, by warranty deed to Everett Construction Company, which was owned by the three Everett brothers and their wives. Curren and Connie Everett rode the property by horseback prior to closing and observed the fence in a state of disrepair—it was down and overgrown in several places. Curren testified:

> We spoke about it as we rode horses there and said that it cannot be the boundary line for 100 acres, so we rode back west and found what we thought was the boundary line. . . . Defendant's Exhibit 1 [an oversized survey of the 100 acres], . . . depicts the fence line or the disputed line. It also shows the western line. The boundary fence line that I found is depicted here, and I am pointing to my western line. This fence runs north to a small cleared area down there to where the loggers had brought their logs to, I guess, and then it is down, and then you cross a ditch and go up to a corner on the north end. In the area where the loggers had pulled their skidders up, the fence was up, and it was a very old fence, but it is on the ground in areas. In places, it is nailed into trees, and where it is nailed into trees, it is still up, with evidence of a fence.

He testified that there were scattered posts in the ground, mostly cedar but metal ones also; that the fence went tree-to-tree; that he could not tell at the time if it ran in a true north/south direction because it would "run a ways and then go to and then come back out"; and that a fire lane had "grown back and would not hold a fire." They saw that timber had been cut at some point, saw areas of undergrowth around the fence, and saw no evidence of horses or cattle being there. Curren testified that he called the realtor and told him about the fence; the realtor said that he had no knowledge of the fence but that the boundary line was "past . . . the dozing," which was the boundary line the brothers had found.

7

SLIP OPINION

Connie's testimony essentially tracked his brother's, describing the fence as old and dilapidated, with parts of it down. He said that there was timber with stumps visible from past cutting, that there was not enough growth for running cattle, and that he did not initially perceive the area along the disputed fence line as a fire lane. The brothers perceived the fence as a "convenience" or "cross" fence rather than an established fence boundary line. They were able to cross it without getting off their horses.

The survey showed that the fence was not near any section or quarter-section line, and aerial photographs showed the disputed tract to be in timber. Surveyor Brian Keen testified that he surveyed the property for the Everetts in 2007 or December 2006 and observed the tree-to-tree fence, which was on the ground in places. He viewed it as a convenience fence rather than a boundary fence, and he denoted the fence on his survey.

Larry Morris, a forestry consultant, testified that the fence was diagonal and not near section or quarter lines; that it appeared to be a convenience or cross fence because it went tree-to-tree; and that "cross fencing . . . means you are fencing in cows in and out. It does not necessarily mean a boundary fence." He was cross-examined concerning an aerial Mapquest photograph, produced by appellants, which showed that the undisputed area of the Everett property had not been timbered but that the property west of the disputed line had been timbered. He testified, "This would tell me someone is claiming it."

The circuit court found that the Laffertys' acts of possession were not sufficient to sustain a claim of adverse possession:

> These acts of possession during the statutory period consist of building a fence enclosing the forested disputed tract, Plaintiffs' predecessor in title running from 20 to

8

23 cattle from time to time on the Plaintiffs' property and the disputed tract, running a few horses on the disputed tract, and cutting a fire lane along the boundary of the disputed tract.

> In order to acquire title to woodland under claim of adverse possession, there must be actual use of such unequivocal character as to reasonably indicate to the owner visiting the premises during the statutory period that such use and occupation indicate an appropriation of ownership to another. To prevail on a claim of adverse possession not under color of title, one must show actual or pedal possession to the extent of the claimed boundaries. *Coons v. Lawler*, [237 Ark. 350, 372 S.W.2d 826 (1963)]. I find that Plaintiffs have failed to meet this burden with the sporadic use to which they have put the disputed tract.

The circuit court's finding that the Laffertys failed to show actual possession by sporadic use of the disputed tract was not clearly erroneous. First, the Everetts, their surveyor, and their forestry consultant perceived the fence to be a convenience fence rather than a boundary line. It ran from tree to tree, was in timber, was observed in 2004 and 2007 to be down in places, ran diagonally, and was not near section or quarter lines. As such, the Laffertys' maintenance and repair of the fence was not of such unequivocal character as to reasonably indicate to the owner visiting the premises during the statutory period an appropriation of ownership to another. Second, their adverse possession claim cannot be sustained by proof that they sold timber once and that the logging activity did not occur over seven years before they filed their litigation. Third, there was no evidence that the Laffertys maintained the fire road or made improvements to it after establishing it in 1997. Finally, testimony that Mr. Lafferty's father-in-law intermittently ran twenty or more cattle on his property, including the disputed tract, and that the Laffertys kept two horses on the property after 1995 did not show acts of possession sufficient to "fly the flag" over the land and put the true owner on notice that his land was held under an adverse claim of ownership.

9



The judgment of the circuit court is affirmed.

GLOVER and WHITEAKER, JJ., agree.

*Michael E. Kelly*; and *Robert S. Tschiemer*, for appellants.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*, for appellees.