

Cite as 2017 Ark. App. 642

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-17-83

| | |
|---|---|
| | **Opinion Delivered** November 29, 2017 |
| JON-CLAUDE JENKINS<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION |
| V. | [NO. 60DR-09-5639] |
| SCARLETT JENKINS<br>APPELLEE | HONORABLE W. MICHAEL REIF, JUDGE |
| | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

This appeal concerns alimony payments. Appellant Jon-Claude Jenkins and appellee Scarlett Jenkins were divorced by a September 2010 Pulaski County Circuit Court decree. In their property-settlement agreement, which was approved by the trial court and incorporated but not merged into the decree, the parties agreed that Jon-Claude would pay Scarlett alimony in the amount of $3000 per month until Jon-Claude's "income is reduced." The agreement did not recite what his income was at that time. Jon-Claude failed to pay alimony beginning in January 2016, leading Scarlett to file a motion for contempt. Jon-Claude filed a countermotion for contempt on other issues. Both motions were considered in the same hearing in October 2016. In an order filed in November 2016, the trial court

found that Jon–Claude had not proved that his income had reduced, that Jon–Claude was $21,000 in arrears, and that he was to immediately commence paying $1000 per month toward those arrears.[1] On appeal, Jon–Claude presents three arguments for reversal: (1) the order is null and void because it was not preceded by the entry and service of a show-cause order; (2) the trial court's findings of fact are clearly erroneous; and (3) the trial court impermissibly modified the terms of the alimony agreement. None of appellant's arguments are persuasive. We affirm the trial court's order.

We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. *Id*. In reviewing a circuit court's findings of fact, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008); *Blalock v. Blalock*, 2013 Ark. App. 659. Appellate courts will not defer to the circuit court on a question of law. *Jones v. Abraham*, 67 Ark. App. 304, 310, 999 S.W.2d 698, 702 (1999). The circuit court's decision will be reversed if it erroneously applied the law and the appellant suffered prejudice as a result. *Emerson v. Linkinogger*, 2011 Ark. App. 234, 382 S.W.3d 806.

---

[1]The order also denied Jon–Claude's countermotion for contempt and ordered him to pay Scarlett $2500 in attorney's fees. Those findings are not at issue on appeal.

A court has no authority to modify an independent contract that is made part of a divorce decree. *Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007). Alimony, in instances where there is an agreement, arises from a contract right, not an equitable right, through the system of justice. *Id.* While the agreement is still subject to judicial interpretation, we must apply the rules of contract construction in interpreting the agreement. *Id.* When a contract is unambiguous, its construction is a question of law for this court. *Id.* When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.*

We now examine the events leading to this appeal. Scarlett filed her motion for contempt in May 2016, alleging that Jon-Claude was in arrears for at least two months of alimony payments, which was in willful contempt of their property-settlement agreement. Scarlett sought an order from the trial court directing him to obey the agreement's provisions, ordering him to pay her costs and attorney's fees, and assessing him with appropriate sanctions for his willful violations. In June 2016, Jon-Claude filed a response to the motion for contempt as well as a countermotion for contempt against Scarlett for alleged violations of their agreement.[2] In his response, Jon-Claude denied that he was in contempt and contended

---

[2]Jon-Claude accused Scarlett of (1) failing to pay certain school costs, (2) violating the no-cohabitation clause in the agreement, (3) failing to pay particular costs associated with the marital residence and failing to refinance the mortgage, and (4) failing to pay the outstanding indebtedness on a jointly owned vehicle. Jon-Claude does not contest the trial court's ultimate finding that Scarlett was not in contempt of the agreement.

SLIP OPINION

that his income had been reduced, which terminated his obligation to pay alimony.

In August 2016, Scarlett's attorney sent a letter to Jon-Claude's attorney stating that the trial court's case coordinator had informed her that a hearing time was available and reserved for October 10, 2016, at 1:30 p.m., set for 1½ hours. The letter asked for confirmation of this setting from Jon-Claude's attorney. The trial court subsequently sent a letter to both attorneys on August 31, 2016, advising that a contempt hearing had been set for October 10, 2016, at 1:30 p.m. The hearing commenced as scheduled. At the outset, the trial court asked if there was any objection to hearing both parties' motions for contempt in one proceeding, and Jon-Claude's attorney responded, "That's fine, Your Honor."

Scarlett testified, in pertinent part, that she agreed to the alimony provision and that Jon-Claude was seven months in arrears as of the October 2016 hearing. She disputed that Jon-Claude's income had been reduced. She explained that he was an independent contractor in sales for Whelen Engineering Company, which was the same job he had before and after the divorce. Scarlett testified that when they were married, he would get paid monthly, and his commission varied from month to month and from year to year. Typically, after the first of the year, he would receive a 1099 from the company to show his income. She entered into evidence Jon-Claude's 1099 from 2009, which showed his income that year to be $371,751. Scarlett was unaware of what his income was at the time they agreed in August 2010 to the alimony provision, but Jon-Claude agreed at that time to pay $3000 per month. She presented his 2010 1099, which she had received from Jon-Claude through discovery,

SLIP OPINION

showing his income to be $239,417. Scarlett said that when they entered into the alimony agreement, Jon-Claude had already received eight or nine monthly checks in 2010, so that was why she was relying on the 2010 1099 as providing his baseline-income figure. Scarlett also presented Jon-Claude's 2015 1099 that showed that year's income to be $272,732.28, which was more than he had earned in 2010. A 1099 for the year 2016 was not yet available because it would not be prepared until early 2017.

Jon-Claude testified that he was still "a 1099 contractor with Whelen Manufacturer," that he was responsible for managing the sales distribution in his territory, and that he had no other employment. He presented a letter from Whelen that indicated that his commission was reduced from 15% to 10% beginning in June 2015, but he acknowledged that the company increased its list prices on the products he was selling. Jon-Claude agreed that he had not filed any motion to stop paying alimony. He did not present any evidence or testimony as to his income in the current year, 2016.

The trial court recessed to deliberate on the matter and returned to open court to announce its decision. The trial court noted that the divorce decree was silent on how the alimony was initially calculated or how much income Jon-Claude was receiving at the time of the entry of the decree. The trial court referred to the 1099s from 2009, 2010, and 2015, noting that there would have been income information available about the months in 2010 leading up to the September 2010 decree. In the end, the trial court concluded that Jon-Claude had not carried his burden to prove that his income had decreased.

SLIP OPINION

A formal order was entered in November 2016, memorializing the trial court's finding that Jon–Claude was in contempt for failing to pay alimony as agreed and ordered, given that he failed to prove his income had decreased. The $21,000 arrearage was reduced to a judgment that would accrue interest until paid in full, and Jon–Claude was ordered to immediately begin paying $1000 per month to Scarlett toward that arrearage until paid in full. Jon–Claude filed a timely notice of appeal.

Jon–Claude first argues that the order on appeal is null and void because it was not preceded by the entry of a show-cause order and service of that show-cause order. He contends that absent the proper procedure and notice, the trial court lacked jurisdiction to enter the contempt order. Jon–Claude acknowledges that he raises this issue for the first time on appeal, which generally bars consideration of the argument on appeal, but he asserts that lack of subject-matter jurisdiction can be raised for the first time on appeal. We reject Jon–Claude's argument.

Subject-matter jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *St. Paul Mercury Ins. v. Circuit Court of Craighead Cty.*, 348 Ark. 197, 73 S.W.3d 584 (2002). Subject-matter jurisdiction cannot be conferred on a court by consent of the parties, *Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995), or by waiver, *Pederson v. Stracener*, 354 Ark. 716, 128 S.W.3d 818 (2003). Subject-matter jurisdiction is always open, cannot be waived, and can be questioned for the first time on appeal. *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envtl. Servs., Inc.*, 2011 Ark. 501, 385

6

SLIP OPINION

S.W.3d 797. However, the assertion that an unpreserved argument really goes to subject-matter jurisdiction has been tried and rejected. *See Joshlin Bros. Irrigation v. Sunbelt Rental, Inc.*, 2014 Ark. App. 65. As stated in *Banning v. State*, 22 Ark. App. 144, 149, 737 S.W.2d 167, 170 (1987):

> [T]here is a distinction between want of jurisdiction to adjudicate a matter and a determination of whether the jurisdiction should be exercised. Jurisdiction of the subject matter is power lawfully conferred on a court to adjudge matters concerning the general question in controversy. It is power to act on the general cause of action alleged and to determine whether the particular facts call for the exercise of that power. Subject matter jurisdiction does not depend on a correct exercise of that power in any particular case.

A court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought. *Edwards v. Edwards*, 2009 Ark. 580, 357 S.W.3d 445. On the other hand, a court's failure to follow the statutory procedure in the exercise of its power may constitute reversible error, but it does not oust the court's subject-matter jurisdiction. *Noble v. Norris*, 368 Ark. 69, 243 S.W.3d 260 (2006); *Williams v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 171, 458 S.W.3d 271; *Ward v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 106. Stated differently, a court may act contrary to a statute but do so within its subject-matter jurisdiction. *Peace v. Peace*, 2016 Ark. App. 406, 500 S.W.3d 169.

Arkansas Code Annotated section 9-12-313 (Repl. 2015) grants courts of equity the authority to enforce written agreements between husbands and wives made in contemplation of divorce by lawful means including contempt proceedings. It is evident that the trial court had subject-matter jurisdiction to make a determination regarding these competing contempt

motions. Moreover, we note that Jon-Claude was undoubtedly on notice of the allegations regarding failure to pay alimony, the request to hold him in contempt, and the setting of the hearing. Jon-Claude's failure to raise any notice or procedural defect waives this argument for purposes of appeal. *See Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). Thus, this point holds no merit.

Jon-Claude's second argument on appeal is that the trial court's findings of fact are clearly erroneous. Specifically, he argues that the trial court clearly erred in finding that there was evidence of his income in the months of 2010 leading up to their agreement on alimony; erred in finding the 2010 1099 to be the best indicator of his 2010 income; and erred in accepting the 2015 1099 as evidence of his most recent income with no evidence of his 2016 income. We disagree that he has demonstrated clear error on the trial court's part.

The parties entered into this alimony agreement in August 2010, and it was approved in September 2010. There was testimony that Jon-Claude was paid on a monthly basis, which supports that there was income information available to one or both parties at the time of the agreement. There can be no dispute that the 2010 1099 was the best evidence of Jon-Claude's income that year. The only remaining evidence on income was the 2015 1099, which showed a higher income than that earned in 2010. It was Jon-Claude's burden to establish that there was a decrease in his income, given that he failed to pay alimony beginning in January 2016. Jon-Claude failed to present any evidence regarding his year-to-date income in 2016. We hold that the trial court did not clearly err in its findings of fact on the matter

SLIP OPINION

of Jon-Claude's income.

For his final argument on appeal, Jon-Claude asserts that the trial court "abused its discretion by modifying the terms of alimony." His precise argument is that the trial court modified the agreement when it ordered him to pay $1000 per month toward his alimony arrearage until it was paid in full. He concedes that entry of a money judgment would not constitute a modification of the agreement. Scarlett asserts that the trial court's order regarding repayment of the arrearage is not an abuse of discretion or a modification of their contractual agreement on alimony. We uphold the trial court's order on this issue.

Jon-Claude fails to explain how the trial court's enforcing the written contractual agreement between these parties constitutes a modification of that agreement. The trial court has the power to construe, clarify, and enforce the parties' settlement agreement. *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761 (2004). The divorce decree provided that the trial court retained jurisdiction over the parties and the subject matter "for such further orders necessary for the enforcement of this decree." Arkansas Code Annotated section 9-12-313 provides:

> Courts of equity may enforce the performance of written agreements between husband and wife made and entered into in contemplation of either separation or divorce and decrees or orders for alimony and maintenance by sequestration of the property of either party, or that of his or her sureties, or by such other lawful ways and means, including equitable garnishments or contempt proceedings, as are in conformity with rules and practices of courts of equity.

The trial court did not increase, decrease, or terminate the alimony; it did not change the terms of the alimony agreement in any way. The payment schedule was merely a method of

enforcing Jon-Claude's agreement to pay Scarlett monthly alimony, and this $21,000 in alimony was past due. Jon-Claude has failed to demonstrate trial court error on this point.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Ballard & Ballard, P.A.*, by: *Andrew D. Ballard*, for appellant.

*Coplin & Hardy, PLLC*, by: *Betty J. Hardy*, for appellee.